IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GENE ASBURY, JAMES LEMONNIER,
BONNIE LOHMEYER, FRED OSIER,
HARRY RUSH, LAURIE SKEMP, and
ROYAL PALM VILLAGE RESIDENTS,
INC., on behalf of themselves, the class of
current and former mobile homeowners in
the Park and all others similarly situated,

                                      CASE NO. 8:19-cv-00874-T-36SPF

     Plaintiffs,

                                        **CLASS ACTION REPRESENTATION**
Vs.                                     **AND DEMAND FOR JURY TRIAL**
                                        **INJUNCTIVE RELIEF SOUGHT**

MONICA SLIDER, SHERI WOODWORTH,
BELINDA LAWSON, SUN COMMUNITIES,
INC., ROYAL PALM VILLAGE, LLC,
AMERICAN LAND LEASE, INC.,
ASSET INVESTORS OPERATING
PARTNERSHIP, L.P., RICHARD LEE,
and LUTZ, BOBO & TELFAIR, P.A.,
d/b/a Lutz, Bobo, Telfair, Eastman &
Lee, f/k/a Lutz, Webb & Bobo, P.A.,

     Defendants.
_____/

### AMENDED COMPLAINT

Plaintiffs Gene Asbury, James LeMonnier, Bonnie Lohmeyer, Fred Osier,

Harry Rush, Laurie Skemp, and Royal Palm Village Residents, Inc., as putative class

representatives on behalf of themselves, the class of current and former mobile

homeowners in the Royal Palm Village Mobile Home Park and all others similarly

situated, by and through the undersigned counsel, bring this Amended Complaint against

Defendants Monica Slider, an individual, Sheri Woodworth, an individual, Belinda

Lawson, an individual, Sun Communities, Inc., a foreign (Maryland) corporation, Royal Palm Village, LLC, a foreign (Delaware) limited liability company, American Land Lease, Inc., a foreign (Delaware) corporation, Asset Investors Operating Partnership, L.P., a foreign (Michigan) limited partnership, Richard Lee, an individual, and Lutz, Bobo & Telfair, P.A., d/b/a Lutz, Bobo, Telfair, Eastman & Lee, f/k/a Lutz, Webb & Bobo, P.A., a Florida Corporation, collectively referred to in this Amended Complaint as "Defendants," and alleges:

### PARTIES:

1.     Plaintiffs Gene Asbury, James LeMonnier, Bonnie Lohmeyer, Fred Osier, Harry Rush, and Laurie Skemp are individuals who reside in Florida and are bona fide mobile home owners who rent or lease the lot underneath their home for residential use within the Royal Palm Village Mobile Home Park ("Park") in Polk County, Florida. Plaintiffs Gene Asbury, James LeMonnier, Bonnie Lohmeyer, Fred Osier, Harry Rush, and Laurie Skemp are the putative class representatives and act on behalf of themselves, the class of current and former mobile homeowners in the Park and all others similarly situated. They are collectively referred to in this Amended Complaint as the "Individual Plaintiffs," "Plaintiff mobile home owners," or the "putative class representatives."

2.     Plaintiff Royal Palm Village Residents, Inc., ("Royal Palm HOA") is a Florida not-for-profit corporation with its principal place of business located in the Park at 3000 US Highway 17-92 West, Polk County, Haines City, Florida. The Park is an age 55 and older mobile home park with 380 approved mobile home lots (with a maximum of 547 lots expected). Royal Palm HOA is formed and operates in compliance with §§ 723.075 through 723.079, *Fla. Stat.* The Royal Palm HOA is the putative class representative and acts on behalf of itself, the class of current and former mobile homeowners in the Park who seek injunctive or declaratory relief only under Count Five of this Amended Complaint and all others similarly situated. It is referred to in this

Amended Complaint as the "Royal Palm HOA," or the "putative class representative for injunctive or declaratory relief."

3.     Defendant Monica Slider is an individual who currently resides in Orange County, Florida. In her LinkedIn.com Internet web-profile, Monica Slider is identified as the Regional Vice President of Operations & Sales at Defendant Sun Communities, Inc., since February 2010 with her principal place of business located in Orlando, Florida. Monica Slider is an operator of the Park because she has authority to act as the park owner in matters relating to the administration and management of the Park, including, but not limited to, authority to make decisions relating to the Park.

4.     Defendant Sheri Woodworth is an individual who currently resides in Southfield, Michigan. In her LinkedIn.com Internet web-profile, Sheri Woodworth is identified as the Division Vice President, Sales and Operations at Sun Communities, Inc., since December 2011 with her principal place of business located at 27777 Franklin Road, Suite 200, Southfield, Michigan. Sheri Woodworth is an operator of the Park because she has authority to act as the park owner in matters relating to the administration and management of the Park, including, but not limited to, authority to make decisions relating to the Park.

In her LinkedIn.com Internet web-profile, Sheri Woodworth further describes her job responsibilities at Sun Communities:

> Key driver of success in both sales and operational responsibilities for 43 communities with emphasis on driving home sales, resident relations, resident retention and creating a superior customer experience. Develop quarterly and annual sales plan and in support of organizational strategy and objectives; recommend sales strategies for improvement based on market research and competitor analysis; build, train, develop, and manage sales and operations teams capable of carrying out company initiatives; partner with management team to ensure the best possible service and effective communications; oversee operating and capital budgets for the communities in portfolio; ensure capital investments are tied to demonstrable returns in accordance with company return on investment

thresholds; full P & L oversight for $85M+ in annual revenue and 200+ people; ensure best-in-class community operations and appearance are maintained, including amenities, lifestyle events, for-sale inventory and top talent; coach, train, develop Community Managers and sales teams to carry out community and resident initiatives.

<https://www.linkedin.com/in/sheri-woodworth-ab77026/>

5.      Defendant Belinda Lawson is an individual who currently resides in Polk County, Florida. In her LinkedIn.com Internet web-profile, Belinda Lawson is identified as the Park manager and an employee of Defendant Sun Communities, Inc., since February 2016 with her principal place of business located at the Park. Belinda Lawson is an operator of the Park because she has authority to act as the park owner in matters relating to the administration and management of the Park, including, but not limited to, authority to make decisions relating to the Park.

6.      Defendant Sun Communities, Inc. ("Sun Communities"), is a NYSE publicly traded foreign (Maryland) corporation. Sun Communities′ principal place of business is located at 27777 Franklin Road, Suite 200, Southfield, Michigan. Sun Communities also has regional property management offices in the Middle District of Florida. Sun Communities is also engaged in business at the Park. Sun Communities owns the Park directly, or indirectly through its subsidiaries, Defendants Asset Investors Operating Partnership, L.P., and Royal Palm Village, LLC.

As a publicly traded corporation, Sun Communities has a Code of Business Conduct & Ethics. The pertinent sections are reproduced below (emphasis added):

### Code of Business Conduct & Ethics

I.      Introduction

Sun Communities, Inc. (together with its subsidiaries, the ″Company″) seeks at all times to **conduct its business in accordance with the highest standards of honest and ethical conduct and in compliance with applicable laws, rules and regulations**. This Code of Business Conduct and Ethics (the ″Code″) governs the business decisions made

Page 4

and actions taken by the Company's employees, officers and directors and **is an expression of the Company's fundamental and core values which include: (i) integrity and honesty in the Company's and its team members' dealings with customers, suppliers, co-venturers, competitors, shareholders and the community;** ...

... it is impossible to anticipate all possibilities. Therefore, **in addition to compliance with the Code and applicable laws, rules and regulations, all Company team members are expected to observe the highest standards of business and personal ethics in the discharge of their assigned duties and responsibilities.**

***

G.     Compliance with Laws, Rules and Regulations

The Company is committed to conducting its business with honesty and integrity and in compliance with all applicable laws, rules and regulations. **No team member shall engage in any unlawful or unethical activity, or instruct others to do so, for any reason.** ...

... If team members have questions on specific laws, rules or regulations they should contact the Compliance Officer who will determine whether to notify the Company's outside legal counsel.

***

J.     Fair Dealing

Team members should endeavor to **act fairly, honestly, ethically and in accordance with applicable laws in all business dealings** on behalf of the Company, including in all dealings with the Company's customers, suppliers, competitors and team members. **No team member should take unfair advantage of another person through manipulation, concealment, abuse of privileged or confidential information, misrepresentation of material facts, or any other unfair dealing practice.** ...

***

Sun Communities - Code of Business Conduct & Ethics (Emphasis Added)

7.     Defendant Royal Palm Village, LLC ("Royal Palm Village"), is a foreign (Delaware) limited liability company with its principal place of business located at 27777 Franklin Road, Suite 200, Southfield, Michigan. Royal Palm Village is also engaged in business at the Park. Royal Palm Village is identified in official court records of the Polk

County Clerk of Court as the owner and operator of the Park.

8.      Defendant American Land Lease, Inc. ("American Land Lease"), was a foreign (Delaware) corporation with its principal place of business located at 380 Park Place Blvd., Suite 200, Clearwater, Florida. American Land Lease was the owner and operator of the Park. American Land Lease was dissolved effective September 25, 2015.

9.      Defendant Asset Investors Operating Partnership, L.P., ("Asset Investors Partnership"), is a foreign (Michigan) limited partnership with its principal place of business located at 27777 Franklin Road, Suite 200, Southfield, Michigan. Asset Investors Partnership is the managing member of Defendant Royal Palm Village. Asset Investors Partnership directly or indirectly owns the Park.

10.     Defendant Richard Lee is an individual who currently resides in Leon County, Florida. Richard Lee is a licensed Florida lawyer since 1980, a partner or an employee or shareholder of Defendant Lutz, Bobo & Telfair, P.A., d/b/a Lutz, Bobo, Telfair, Eastman & Lee, with its principal place of business located at 2155 Delta Blvd., Suite 201B, Tallahassee, Florida. Richard Lee is a founding or participating member and lobbyist for the Florida Manufactured Housing Association, Inc., the mobile home park owners' trade association. Richard Lee is identified in official court records of the Polk County Clerk of Court as attorney of record for Royal Palm Village.

11.     Defendant Lutz, Bobo & Telfair, P.A. ("Lutz Bobo Law Firm"), d/b/a Lutz, Bobo, Telfair, Eastman & Lee, f/k/a Lutz, Webb & Bobo, P.A., is a Florida corporation with its principal place of business located at 2155 Delta Blvd., Suite 201B, Leon County, Tallahassee, Florida and also at One Sarasota Tower, Two North Tamiami Trail, Fifth Floor, Sarasota County, Florida. Lutz Bobo Law Firm is a founding member and lobbyist for the Florida Manufactured Housing Association, Inc. Lutz Bobo Law Firm is identified in official court records of the Polk County Clerk of Court as attorney of record for Royal Palm Village.

## JURISDICTION AND VENUE:

12.     This action is brought under the federal Racketeer Influenced and Corrupt Organization ("RICO") statute, 18 U.S.C. § 1961, *et seq*. Jurisdiction is vested in this Court by virtue of 28 U.S.C. § 1331.

13.     Under § 48.193, *Fla. Stat*., this Court has personal jurisdiction over each defendant because, among other reasons, each defendant operates, conducts, engages in, or carries on a business or business venture in the State of Florida or has an office in the State of Florida or has committed tortious acts within the State of Florida.

14.     In the alternative, under 18 U.S.C. § 1965(a), this Court has personal jurisdiction over each defendant because each defendant resides, is found, has an agent, or transacts his/her affairs in this district.

15.     To the extent any defendant is found not to be subject to this Court's personal jurisdiction under § 48.193, *Fla. Stat*., or 18 U.S.C. § 1965(a), this Court may exercise personal jurisdiction over the defendant(s) under 18 U.S.C. § 1965(b) because the ends of justice require that the Court exercise personal jurisdiction over any defendant who claims not to have sufficient minimum contacts with the forum.

16.     Defendants engaged in a multi-district conspiracy to defraud Plaintiffs. The Court has personal jurisdiction over most, if not all, of the alleged co-conspirators, and there is no other district that may exercise personal jurisdiction over all Defendants.

17.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District and because a substantial part of the events or omissions giving rise to these claims occurred in this District and a substantial part of the property that is the subject of this action is situated in this District.

## CLASS REPRESENTATION ALLEGATIONS:

18.     Plaintiffs Gene Asbury, James LeMonnier, Bonnie Lohmeyer, Fred Osier, Harry Rush, and Laurie Skemp, and Royal Palm HOA bring this class action on behalf of themselves individually and all others similarly situated, under *Fed. R. Civil P.* 23.

19.     The proposed Class consists of all persons who are or were mobile home owners in the Park from 2009 to the present and were victimized by the fraudulent and conspiratorial acts of Defendants Monica Slider, Sheri Woodworth, Belinda Lawson, Sun Communities, Royal Palm Village, American Land Lease, and Asset Investors Partnership since 2015 to illegally and unreasonably deceive over 400 elderly mobile home owners and the Royal Palm HOA that their mobile home park was lawfully purchased by the Defendants Sun Communities and Royal Palm Village. Subsequently, the Defendants Monica Slider, Sheri Woodworth, Belinda Lawson, Sun Communities, Royal Palm Village, American Land Lease, and Asset Investors Partnership acted and conspired to circumvent statutory regulations under the Florida Mobile Home Act and engaged in further deceit:

- passing-on increased ad valorem taxes (resulting from the premium purchase price for the Park) to the elderly Plaintiff mobile home owners;

- illegally passed-on their annual fire and stormwater tax using only the 300 occupied lots instead of using all of the 390 approved lots and the clubhouse, exercise room, maintenance building and office;

- lot rental categories (water, preserve, oversize) were a legal basis for discriminatory lot rental increases - "water" was really retention pond. Preserve" was really raw wetlands or scrub land - with associated premium lot rents;

- deceived and compelled the Royal Palm HOA to enter into an oppressive and illegal five year lot rental agreement;

- Defendants Sun Communities, Royal Palm Village, Monica Slider, and Sheri Woodworth promised to spend $1,000,000 on maintenance, repair, and replacement of roads, seawalls and common areas as an inducement to enter into the five year lot rental agreement;

- Defendants Lee and Lutz Bobo Law Firm misrepresented the legal effect of the five year agreement to cause DBPR to withdraw the Royal Palm Village Residents, Inc.'s grant of mediation;

- Resale home purchasers are required to pay a $399 "Home Prep Fee" in violation of § 723.031(3), *Fla. Stat.*; and

- misleading mobile home owners that the Park clubhouse and facilities are ADA compliant.

20.    The Class includes those Plaintiff current or former mobile home owners who have been forced or expect to be forced to pay fraudulently increased lot rental and ad valorem tax pass-ons associated with: the illegal purchase of the Park; excessive, improper fire and stormwater tax pass-ons; discriminatory rental increases from illegal characterization of "on water" and "on preserve" or oversize lots; the oppressive and illegal five year lot rental agreement; the misrepresentation of the inducement to enter into the five year agreement and of the legal effect of the five year agreement causing mediation with Royal Palm HOA to be withdrawn; resale home purchasers are required to pay a $399 "Home Prep Fee" in violation of § 723.031(3), *Fla. Stat.;* and the misrepresentation that the Park clubhouse and facilities are ADA compliant.

21.    The Class includes those elderly and disabled Plaintiff current or former mobile homeowners who have suffered the deprivation or expect to suffer the deprivation of a handicap accessible Park clubhouse, facilities, and common areas.

22.      Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that market or sell homes in the Park, the judge(s) assigned to this case, and the attorneys of record in this case. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

23.      This action is properly brought as a class action because:

(a)      The proposed Class is so numerous and geographically dispersed throughout the United States and Canada that the joinder of all Class Members is impracticable. The number of Class members is approximately 400 persons, and is expected to grow as homes in the Park are resold. Many of the Class Members are seasonal residents of Florida and reside in other portions of the United States and Canada during the remainder of the year;

(b)      The disposition of Plaintiffs' and putative Class Members' claims in a class action will provide substantial benefits to both the parties and the Court;

(c)      The proposed Class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged in this Amended Complaint since the rights of each proposed Class Member were infringed or violated in similar fashion and uniform manner;

(d)      There are questions of law and fact common to the proposed Class which predominate over any questions that may affect particular Class Members. Common questions of law and fact include but are not limited to:

1.      Whether Defendants violated 18 U.S.C. § 1962;

2.      Whether Defendants violated Title 3 of the ADA - 42 U.S.C. § 12181 *et seq.*;

3.      Whether Defendants violated the Florida Mobile Home Act, Chapter 723, *Fla. Stat.*;

Page 10

4.     Whether Plaintiffs and Class Members have been harmed and the proper measure of relief;

5.     Whether Plaintiffs and Class Members are entitled to an award of treble damages, punitive damages, attorneys' fees and costs; and

6.     Whether Plaintiffs and Class Members are entitled to equitable relief, and if so, the nature of the relief.

(e)     Plaintiff mobile home owners' claims are typical of the claims of the members of the proposed Class. Plaintiff mobile home owners and Class Members have been injured by the wrongful practices of Defendants. Plaintiff mobile home owners' claims arise from the practices and conduct that give rise to the claims of all Class Members and are based on the legal theories;

(f)     Plaintiff mobile home owners will fairly and adequately protect the interests of the Class in that they have no interests antagonistic to those of the other Class Members, and Plaintiff mobile home owners have retained an attorney experienced in consumer class actions and complex litigation as counsel;

(g)     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

1.     Given the size of individual Class Members' claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

2.     This action will promote an orderly and expeditious administration and adjudication of the proposed Class

claims, economies of time, effort and resources will be fostered and uniformity of decisions will be insured;

3.      Without a class action, Class Members will continue to suffer damages, and Defendants' violations of law will proceed without remedy while Defendants continue to reap and retain the proceeds of their wrongful conduct; and

4.      Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude class certification.

24.      Defendants and their agents had, or have access to, address information for the Class Members, which may be used for the purpose of providing notice of the class action.

25.      Plaintiffs Gene Asbury, James LeMonnier, Bonnie Lohmeyer, Fred Osier, Harry Rush, and Laurie Skemp seek damages, equitable relief, attorneys' fees, and costs on behalf of the Class on grounds generally applicable to the entire proposed Class.

26.      Plaintiff Royal Palm HOA seeks equitable relief only under Count Five of this Amended Complaint, attorneys' fees, and costs on behalf of the Class on grounds generally applicable to the entire proposed Class.

## BACKGROUND

**DEFENDANTS′ CONCERTED DECEPTIVE SCHEME:**

**Purchase of the Park Under an ″Unsolicited Offer″**

27.     In an August 6, 2014 letter to the Royal Palm HOA, American Land Lease President and CEO David Lentz explained that affiliates of Sun Communities agreed as of July 30, 2014 to acquire American Land Lease. Sun Communities took over management and operation of the Park on or about January 6, 2015.

28.     Defendants Sun Communities, Royal Palm Village, American Land Lease Asset Investors Partnership falsely represented to the Plaintiff Royal Palm HOA and over 400 elderly homeowners that the purchase of the Park had been arranged through an "unsolicited offer."

29.     The offer to purchase the Park was not ″unsolicited.″ The purchase was arranged through brokers, agents, or attorneys for Sun Communities, Royal Palm Village, American Land Lease, and Asset Investors Partnership.

30.     Sun Communities, Royal Palm Village, American Land Lease, and Asset Investors Partnership concealed that the offer was solicited; the consequence of which frustrated the Royal Palm HOA's statutory right of first refusal to match the contract terms and conditions under § 723.071(1), *Fla. Stat*. Sun Communities, Royal Palm Village, American Land Lease, and Asset Investors Partnership concealed the true circumstances and nature of the sale and purchase of the Park from the Plaintiff mobile home owners and the Royal Palm HOA through the date of the filing of this Amended Complaint.

31.     The Plaintiff Royal Palm HOA and the Plaintiff mobile home owners learned in March 2019 that the sale of the Park was neither pursuant to an ″unsolicited offer″ nor otherwise compliant with the requirements §723.071, *Fla. Stat.*

32.     The sale by Defendants Royal Palm Village, American Land Lease, and

Asset Investors Partnership to Sun Communities was not exempt from the requirements of Section 723.071(1), *Fla. Stat.*

**Increased Ad Valorem Tax Pass-ons from Purchase of the Park**

33.    Plaintiff mobile home owners were damaged by the consequent increased annual ad valorem pass-ons associated with the premium purchase Sun Communities paid for the Park.

**Improper Pass-on of Fire and Stormwater Tax**

34.    Defendants Sun Communities and Royal Palm Village illegally passed on their annual fire and stormwater tax using the incorrect denominator of the 300 occupied lots. The Defendants omitted the balance of the 390 approved lots and the clubhouse, exercise room, maintenance building and office.

**Discriminatory Lot Rental Categories: "Water," "Preserve," "Oversize"**

35.    Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth and Belinda Lawson provided the Plaintiff mobile home owners via United States mail and the Internet <https://www.suncommunities.com/community/royal-palm-village/> the following glowing reports of life at the Park:

***

Manufactured Home Living in Haines City, Florida!

Royal Palm Village 55+ community **welcomes everyone from fishermen to nature enthusiasts with its sparkling lagoons, tranquil canals,** resort-style amenities, and carefree 55+ lifestyle. This scenic, gated retirement community is tucked away from the hustle of the city, yet offers all the relaxing pursuits you seek in Central Florida.

Vacation-style living reigns supreme at Royal Palm Village. This over 55 manufactured home community hosts' resort-style amenities and recreational activities, so you'll never run out of things to do. Residents love taking advantage of our on-site conveniences:

- Swing by our fabulous clubhouse and introduce yourself to your new neighbors

- Head over to the recreation center for an array of leisurely activities

- Hop in the water or relax poolside by our heated swimming pool

- Get fit and stay in shape at our state-of-the-art fitness center

- Looking for some friendly competition? Meet up with friends at the shuffleboard courts or horseshoe pits

- Stay as busy as you'd like with neighborhood activities and community social calendar

\*\*\*

With luxurious amenities, welcoming neighbors, and the friendliest staff in town, it's easy to see why our residents are proud to call Royal Palm Village home.

AMENITIES

Pet Friendly
Dog Park
**Waterfront Sites**
**Street Facing Sites**
**Wooded Sites**
RV Storage
Boat Storage

\*\*\*

36.    Defendant Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth and Belinda Lawson's lot rental categorization of "on water" is false and fraudulent. The Park "on water" categorization is described on in-park signage as "**venetian canals**," or on the website maintained by or referenced by Defendant Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth and Belinda Lawson as "**sparkling lagoons**" or "**tranquil canals**," are simply retention ponds. During substantial periods of the year those retention ponds are eyesores and a drag on access, use, and enjoyment of the property or Park.

37.    Lots categorized as facing "natural preserve" are also false and fraudulent.

There are no natural preserves in the vicinity of any such lots; the land falsely attributed to a "natural preserve" is simply ordinary scrub-lands or wetlands with accumulated rubbish and debris.

38.     In 2016, Defendants Monica Slider and Sun Communities changed the lot rental categories in the Park to standard, corner, and oversized lots. Lots facing or in proximity to a "natural preserve" currently pay a premium of $59 per month or $708 per year. "Water" lots pay a premium of $93 per month or $1,116 per year.

39.     There are 380 approved lots in the Park. 260 homeowners pay an average premium of $912 per year or a total of $237,120 for falsely being on "water" or in the proximity of a "natural preserve." Considering that the average residency for a mobile homeowner is ten years, the damages from the false and fraudulent lot rental premium categorization exceeds 2.3 million dollars.

40.     On or about October 15, 2017 Royal Palm HOA President, Board member, and elderly homeowner Jim LeMonnier asked Defendant Monica Slider if Sun Communities owned the areas categorized as "natural preserve." Monica Slider replied that Sun Communities owns those grounds, also.

**Deceived the Royal Palm HOA to Enter Into an Oppressive and Illegal Agreement**

41.     On or about September 16, 2015 Defendants Sun Communities, Royal Palm Village, Monica Slider, and Sheri Woodworth deceived the Royal Palm HOA to circumvent the normal statutory disclosure and negotiation process under §723.037, *Fla. Stat.*, and to instead enter into a five year lot rental agreement increasing the lot rental by $16 in 2016, $17 in 2017, $18 in 2018, $19 in 2019 and $20 in 2020. The Agreement was drafted by Richard Lee and Lutz Bobo Law Firm.

42.     In paragraph 3 of the agreement, the Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, Richard Lee and Lutz Bobo Law Firm caused the agreement to include the following language: "... the Association further agrees

to waive any right to object to said [rental] increases which either the Association or the mobile home owners have under Chapter 723, Florida Statutes, including, but not limited to, the right to petition for mediation and the right to institute civil action in opposition to any of the provisions of this Agreement." This contractual language is clearly prohibited by §723.032(2), *Fla. Stat.*, which reads: "Any provision in the rental agreement is void and unenforceable to the extent that it attempts to waive or preclude the rights, remedies, or requirements set forth in this chapter or arising under law."

43.     The Royal Palm HOA subsequently met with Defendant Monica Slider in 2017 to discuss issues with the September 2015 Agreement and excessive resulting rent increases. Monica Slider presented the Royal Palm HOA with the 2015 comparable park data which she reportedly used in the 2015 rent negotiations—but never disclosed to the Royal Palm HOA until 2017. Significantly, that previously undisclosed park comparable lot rental data revealed that Defendants Sun Communities, Royal Palm Village, Monica Slider, and Sheri Woodworth had, under the pretense of the appearance of a certain fixed increased lot rent, manipulated the Royal Palm HOA into signing the 2015 agreement fixing lot rental increase at a significantly higher lot rental than those rents with associated comparable parks.

44.     The previously undisclosed comparable park data clearly demonstrated that the rental increases imposed pursuant to the 2015 agreement are much higher than the parks they used and presented to Royal Palm HOA.

45.     Immediately after the execution of the 2015 agreement by the Royal Palm HOA binding upon all of the homeowners in the Park, Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, and Belinda Lawson insisted that the Royal Palm HOA withhold disclosure from the other Plaintiff mobile home owners of the terms of the 2015 agreement on the pretense that the deal was so favorable to the Royal Palm HOA that the Defendants Sun Communities, Royal Palm Village, Monica

Page 17

Slider, and Sheri Woodworth did not want other Sun Communities parks to learn of its execution.

**Defendants Promised to Spend $1,000,000 on The Park as Inducement**

46.     In 2015, in an effort to induce the Royal Palm HOA to enter into the five year agreement with Defendants Sun Communities and Royal Palm Village, then Park manager Tim Bias told the Royal Palm HOA and elderly homeowners that the Defendants Sun Communities and Royal Palm Village would spend $1,000,000 on the repair and upgrade of the clubhouse, facilities, and common areas, including roadways and sea walls.

**Richard Lee and Lutz Bobo Law Firm Caused Withdrawal of Mediation**

47.     On or about December 14, 2017 the Defendants Sun Communities, Royal Palm Village, Monica Slider, and Sheri Woodworth caused Richard Lee and the Lutz Bobo Law Firm to send a letter via United States mail to the Florida Department of Business and Professional Regulation ("DBPR") with the expressed intent to influence DBPR to dismiss the previously approved Royal Palm HOA mediation over an increase in lot rental amount, resulting lot amount, and reductions in services. Richard Lee and Lutz Bobo Law Firm accused the Royal Palm HOA of  a "clear act of bad faith" and violation of the September 2015 agreement establishing the lot rental amounts for 2016 through 2020. DBPR consequently dismissed the previously approved mediation.

48.     Defendants Sun Communities, Royal Palm Village, Richard Lee and the Lutz Bobo Law Firm, however, failed to inform or remind DBPR of §723.032(2), *Fla. Stat.*, which reads: "Any provision in the rental agreement is void and unenforceable to the extent that it **attempts to waive or preclude the rights, remedies, or requirements set forth in this chapter or arising under law**." (Emphasis Added)

49.     The Defendants Sun Communities, Royal Palm Village, Richard Lee and the Lutz Bobo Law Firm also failed to inform or remind DBPR of §723.031(1), *Fla. Stat.*, which mandates that a lot rental agreement **may not contain any rule or regulation**

**prohibited by or inconsistent with the Florida Mobile Home Act.**

50.     Defendants Richard Lee and the Lutz Bobo Law Firm drafted or co-authored the correspondence to the DBPR requesting that the previous grant of mediation be withdrawn which incorporated fraudulent misrepresentations regarding the Plaintiffs' legal right to petition for mediation and is not the normal and standard provision of legal services. Defendants Richard Lee and the Lutz Bobo Law Firm acted with fraudulent intent as the legal opinions they expressed were not honestly held but only expressed to advance the scheme. Defendants Richard Lee and the Lutz Bobo Law Firm were aware of the fraud and cloaked the requested withdrawal with a feigned authority of the Five Year Agreement which, in fact, violated The Florida Mobile Home Act, Chapter 723, *Fla. Stat.*, In this manner, Defendants Richard Lee and the Lutz Bobo Law Firm substantially assisted in the commission of the fraud.

**Sun Communities Require Illegal $399 "Home Prep Fee" For All Resale Homes**

51.     In June 21, 2019 correspondence sent via United States mail from James Hoekstra, Senior Vice President of Operations and Sales at Sun Communities to putative Class Representative Fred Osier, Mr. Hoekstra conceded that Defendants **Sun Communities and Royal Palm Village requires the payment of a $399 "Home Prep Fee" for all resale homes** (described as "brokered" homes) in Parks owned or operated by Sun Communities through its wholly owned and controlled subsidiary, Sun Homes, Inc. (identified in the correspondence simply as "Sun Homes"). **This required "Home Prep Fee" violates § 723.031 (3), Fla. Stat.**, which reads: **"The homeowner shall have no financial obligation to the park owner as a condition of occupancy in the park, except the lot rental amount**...." (Emphasis Added).

**Sun Communities Misleads Home Owners Clubhouse Facilities are ADA Compliant**

52.      Since 2015 Defendants Sun Communities, Royal Palm Village, Monica Slider, and Sheri Woodworth actively misled the Royal Palm HOA and the elderly Plaintiff mobile home owners that the Defendants Sun Communities, Royal Palm Village, Monica Slider, and Sheri Woodworth were not legally required to ensure that the clubhouse and the park facilities were compliant with the ADA. When asked by the Royal Palm HOA and the Plaintiff mobile home owners, the Defendants Sun Communities, Royal Palm Village, Monica Slider, and Sheri Woodworth respond that the Clubhouse and facilities are not required to comply with the ADA since their construction predated any such legal requirement; ignoring that the Clubhouse and Park facilities are public accommodations.

**Mail and Wire Fraud**

55.      Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, Lutz Bobo Law Firm, American Land Lease, and Asset Investors Partnership (and their co-conspirators/agents) engaged in a scheme to unlawfully defraud Plaintiff mobile home owners to pay fraudulently increased lot rental and ad valorem tax pass-ons associated with: the illegal purchase of the Park; excessive, improper fire and stormwater tax pass-ons; discriminatory rental increases from illegal characterization of "on water" and "on preserve" or oversize lots; the oppressive and illegal five year lot rental agreement; the misrepresentation of the inducement to enter into the five year agreement and of the legal effect of the five year agreement causing mediation with Royal Palm HOA to be withdrawn; resale home purchasers are required to pay a $399 "Home Prep Fee" in violation of § 723.031(3), *Fla. Stat.;* and the misrepresentation that the Park clubhouse and facilities are ADA compliant. Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, Lutz Bobo Law Firm, American Land Lease, and Asset Investors Partnership (and their co-conspirators/agents) knowingly devised or knowingly participated in a scheme or artifice

to defraud Plaintiff mobile home owners or to obtain the money or property of Plaintiffs by means of false or fraudulent pretenses, representations, material omissions, or promises.

56.     Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, Lutz Bobo Law Firm, American Land Lease, and Asset Investors Partnership (and their co-conspirators/agents) could foresee that the U.S. Postal Service and interstate wires would be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in or carrying out the scheme, within the meaning of 18 U.S.C. §§ 1341 and 1343.

57.     In particular, Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, Lutz Bobo Law Firm, American Land Lease, and Asset Investors Partnership (and their co-conspirators/agents) knew or could foresee that the U.S. Postal Service and interstate wires would be used to receive and/or deliver, *inter alia,* the increased lot rental notices, including improper annual fire and stormwater taxes, used by the Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, Lutz Bobo Law Firm, American Land Lease, and Asset Investors Partnership which incorporated fraudulent representations regarding the Plaintiffs' legal right to change or impose lot rental categories, invoices for payment of increased lot rental and payment of excessive ad valorem tax pass-ons from the sale and purchase of the Park.

58.     Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, Lutz Bobo Law Firm, American Land Lease, and Asset Investors Partnership (and their co-conspirators/agents) acting singly and in concert, personally or through their agents, used the U.S. Postal Service and interstate wires or caused the U.S. Postal Service or interstate wires to be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out a scheme to defraud the Plaintiff mobile home owners within the meaning of 18 U.S.C. §§

1341 and 1343.

59.    It is not possible for Plaintiff mobile home owners to plead with particularity all instances of mail and wire fraud that advanced, furthered, executed, and concealed the scheme because the particulars of many communications are within the exclusive control and within the exclusive knowledge of Defendants Monica Slider, Sheri Woodworth, Belinda Lawson, and Royal Palm Village,  (and their co-conspirators/ agents) other presently unknown individuals. Plaintiff mobile home owners and the Royal Palm HOA know that Defendants Monica Slider, Sheri Woodworth, Belinda Lawson, and Royal Palm Village,  (and their co-conspirators/agents) have communicated using the U.S. Postal service with:

a.    regulators in the Florida Department of Business and Professional Regulation related to the approval, recordation, and dissemination of lot rental increase notices;

b.    the putative class of mobile home owners related to initial sales and closing documents, including current and future payment of increased lot rental and ad valorem, fire and stormwater tax pass-ons, lot rental categorization (i.e., "on water," "on preserve" or "oversize" lots), and the $399 "Home Prep Fee";

c.    the putative class of mobile home owners related to ongoing annual rent increases and increased ad valorem tax pass-ons, and changes to rules and regulations).

Documents related to those communications using the U.S. Postal service are in the control and custody of the Defendants Monica Slider, Sheri Woodworth, Belinda Lawson, and Royal Palm Village,  (and their co-conspirators/agents) and are expected to be the focus of discovery.

60.    By way of example, however, Defendants Sun Communities, Royal Palm

Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, Lutz Bobo Law Firm, American Land Lease, and Asset Investors Partnership (and their co-conspirators/ agents) specifically used the U.S. Postal Service or interstate wires or caused the U.S. Postal Service or interstate wires to deliver each and every telephone call, email, and letter described in paragraphs (supra, ¶¶ 71-110).

61.    Upon information and belief, some of the wire communications described above occurred between persons in the same state but crossed interstate borders by reason of the technology and other mechanisms used to transmit the communication.

62.    Each and every use of the U.S. Postal Service or interstate wires described above was committed by Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, Lutz Bobo Law Firm, American Land Lease, and Asset Investors Partnership and their co-conspirators/agents with the specific intent to defraud Plaintiff mobile home owners or for obtaining the money or property of Plaintiff mobile home owners by means of false or fraudulent pretenses, representations, material omissions or promises. Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, Lutz Bobo Law Firm, American Land Lease, and Asset Investors Partnership and their co-conspirators'/agents' acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 constitute racketeering activity as defined by 18 U.S.C. § 1961(1)(B) or "criminal activity" as defined by *Fla. Stat.* § 772.102(b).

63.    Plaintiff mobile home owners purchased their mobile homes and entered into a long-term lot rental agreement not knowing that the Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, Lutz Bobo Law Firm, American Land Lease, and Asset Investors Partnership fraudulently imposed or changed lot rental categories, and they were forced to pay a higher lot rental, ad valorem tax pass-on, pay an illegal $399 "Home Prep Fee" on their resale home

purchase in violation of § 723.031(3), *Fla. Stat.* and suffer significant reduction in the use, access, or enjoyment of the Park and their home.

64.    Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, Lutz Bobo Law Firm, American Land Lease, and Asset Investors Partnership's scheme to defraud was designed to victimize elderly homebuyers. As such, Defendants intended to take advantage of Plaintiff mobile home owners' perceived ignorance or gullibility and intended to prey on Plaintiff mobile home owners' infirmities.

65.    Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, American Land Lease, and Asset Investors Partnership's scheme further deprives the Plaintiff mobile home owners of their intangible right to honest services under Chapter 723, *Fla. Stat.*, The Florida Mobile Home Act, in which the mails were caused to be used to defraud and deceive the Plaintiff mobile home owners through materially false and fraudulent misrepresentations and omissions. The Plaintiff mobile home owners and Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, American Land Lease, and Asset Investors Partnership have a trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise. The relationship need not be a formal, or classic, fiduciary relationship. Rather, courts have concluded that 18 U.S.C. §§ 1341 and 1346 similarly reach those who assume a comparable duty of loyalty, trust, and confidence, the material breach of which, with the intent to defraud, deprives the victim of the intangible right to honest services. *U.S. v. Milovanovic*, 678 F.3d 713 (9th Cir. 2012), *cert. den.*, 568 U.S. 1126 (2013).

**Claims**

**Count One – RICO; Racketeer Influenced and Corrupt Organizations Act**
Violation of 18 U.S.C. § 1962(c) – *Fla. Stat.* § 772.103(3) by Defendants Monica
Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee

***Slider-Woodworth-Lawson-Lee Enterprise***

70.     Plaintiffs reallege and restate paragraphs 1 through 65.

71.     Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee
constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c) and
*Fla. Stat.* §§ 772.102(3) & 772.10(3), in that they were "a group of individuals associated
in fact" (referred to in this Amended Complaint as the "*Slider-Woodworth-Lawson-Lee
Enterprise*").

> a.     Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard
> Lee shared the common purposes of developing the Park and
> defrauding Plaintiffs of money or property through the fraudulent
> forced surrender of the Plaintiffs' resale purchasers' right to
> assume the resale sellers' prospectus.
>
> b.     Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard
> Lee were related in that they are business partners or associates
> and owed to Plaintiffs a duty of good faith and fair dealing under §
> 723.021, *Fla. Stat.*
>
> c.     The *Slider-Woodworth-Lawson-Lee Enterprise* possessed sufficient
> longevity for the members to carry out their purpose(s) in that the
> *Slider-Woodworth-Lawson-Lee Enterprise* existed from 2009 through
> 2019 (at a minimum).
>
> d.     Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard
> Lee are each a "person," within the meaning of 18 U.S.C. §§

1961(3) & 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of the *Slider-Woodworth-Lawson-Lee Enterprise* through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) & 772.103(3). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (described in paragraphs 55 to 65).

**Alternative 1:** *Royal Palm Village Enterprise*

72.   In the alternative to paragraph 71, between 2009 and 2019 (at a minimum), Royal Palm Village constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§ 772.102(3) & 772.103(3), in that it was a legal entity.

a.   Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of Royal Palm Village, through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) & 772.103(3). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (described in paragraphs 55 to 65).

### Alternative 2: *Royal Palm Village Mobile Home Park Enterprise*

73.     In the alternative to paragraphs 71 and 72, Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§ 772.102(3) & 772.103(3), in that they were "a group of individuals associated in fact" (referred to in this Amended Complaint as the "*Royal Palm Village Mobile Home Park Enterprise*").

      a.    Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm shared the common purposes of defrauding Plaintiffs of money or property through the use of the fraudulent forced surrender of the Plaintiffs' resale purchasers' right to assume the resale sellers' prospectus.

      b.    Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm were related in that they are all alter egos of Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee.

      c.    The *Royal Palm Village Mobile Home Park Enterprise* possessed sufficient longevity for the members to carry out their purpose(s) in that the *Royal Palm Village Mobile Home Park Enterprise* existed from 2009 through 2019 (at a minimum).

      d.    Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of the *Royal Palm Village Mobile Home Park Enterprise* through a pattern of racketeering activity or criminal activity

Page 27

within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) & 772.103(3). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (described in paragraphs 55 to 65).

**Alternative 3: *Richard Lee Enterprise***

74.     In the alternative to paragraphs 71 and 72, between 2009 and 2019 (at a minimum), Richard Lee was an individual who constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§ 772.102(3) & 772.103(3).

    a.     Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of Richard Lee through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) & 772.103(3). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (described in paragraphs 55 to 65).

**Alternative 4: *Lutz Bobo Law Firm Enterprise***

75.     In the alternative to paragraphs 71 and 72, between 2009 and 2019 (at a minimum), the Lutz Bobo Law Firm constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§ 772.102(3) & 772.103(3), in that it was a legal entity.

a.   Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of the Lutz Bobo Law Firm through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) & 772.103(3). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (described in paragraphs 55 to 65).

76.   At all relevant times, the enterprises alleged in paragraphs 55 through 65 (*supra*) were engaged in, and their activities affected, interstate commerce and foreign commerce.

77.   All of the acts of racketeering/crime described in paragraphs 55 to 65 were related so as to establish a pattern of racketeering activity or criminal activity, within the meaning of 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3), in that their common purpose was to defraud Plaintiffs of money and property through the use of the fraudulent forced surrender of the Plaintiffs' resale purchasers' right to assume the resale sellers' prospectus; Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee, personally or through their agent or agents, directly or indirectly, participated in all of the acts and employed in similar methods of commission; Plaintiffs were the victims of the acts of racketeering/crime; or the acts of racketeering/crime were otherwise interrelated by distinguishing characteristics and were not isolated events.

78.   All of the acts of racketeering described in paragraphs 55 to 65 were continuous so as to form a pattern of racketeering activity in that Monica Slider, Sheri

Woodworth, Belinda Lawson, and Richard Lee engaged in the acts of racketeering/ crime over a substantial period of time (i.e., from 2009 through 2019) and in that the acts of racketeering/crime have become the regular way in which Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee do business and, thus, threaten to continue indefinitely.

79.     As a direct and proximate result of, and by reason of, the activities of Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee and their conduct in violation of 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c) and *Fla. Stat.* § 772.104(1). Among other things, Plaintiffs suffered damages to the extent their business or property was transferred to Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee; to the extent Plaintiffs incurred legal fees to set aside or reverse the transfers of money or property that were fraudulently made by Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee; and to the extent that Plaintiffs paid for services that provided no benefit to Plaintiffs and only inflicted harm upon them. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with costs, reasonable attorneys' fees and reasonable experts' fees.

**Count Two – RICO; Racketeer Influenced and Corrupt Organizations Act**
Violation of 18 U.S.C. § 1962(c) – *Fla. Stat.* § 772.103(3) by Defendants
Royal Palm Village, Sun Communities, American Land Lease, Asset Investors
Partnership, and Lutz Bobo Law Firm

80.     Plaintiffs reallege and restate paragraphs 1 through 65.

*Corporate Enterprise*

81.     Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§ 772.102(3) & 772.103(3), in

that they were "a group of individuals associated in fact" (referred to in this Amended Complaint as the "*Corporate Enterprise*").

    a.    Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm shared the common purposes of developing the Park and defrauding Plaintiffs of money or property through the use of the fraudulent forced surrender of the Plaintiffs' resale purchasers' right to assume the resale sellers' prospectus;

    b.    Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm were related in that they are all controlled by Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee who owe to Plaintiffs a duty of good faith and fair dealing under § 723.021, *Fla. Stat*.

    c.    The *Corporate Enterprise* possessed sufficient longevity for the members to carry out their purpose(s) in that the *Corporate Enterprise* existed from 2009 through 2019 (at a minimum).

    d.    Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of the *Corporate Enterprise* through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) & 772.103(3). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud

Page 31

(as described in paragraphs 55 to 65).

**Alternative 1:** *Royal Palm Village Enterprise*

82.      In the alternative to paragraph 81, between 2009 and 2019 (at a minimum), Royal Palm Village,  constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§ 772.102(3) & 772.103(3), in that it was a legal entity.

     a.      Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of Royal Palm Village,  through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) & 772.103(3). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (as described in paragraphs 55 to 65).

**Alternative 2:** *Royal Palm Village Mobile Home Park Enterprise*

83.      In the alternative to paragraphs 81 and 82**,** Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§ 772.102(3) & 772.103(3), in that they were "a group of individuals associated in "fact" (referred to in this Amended Complaint as the "*Royal Palm Village Mobile Home Park Enterprise*"").

a.   Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm shared the common purposes of defrauding Plaintiffs of money or property through the use of the fraudulent forced surrender of the Plaintiffs' resale purchasers' right to assume the resale sellers' prospectus.

b.   Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm were related in that they are all alter egos of Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee.

c.   The *Royal Palm Village Mobile Home Park Enterprise* possessed sufficient longevity for the members to carry out their purpose(s) in that the *Royal Palm Village Mobile Home Park Enterprise* existed from 2009 through 2019 (at a minimum).

d.   Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c) and *Fla. Stat.* § 772.103, who individually conducted, participated in, engaged in, and operated and managed the affairs of the *Royal Palm Village Mobile Home Park Enterprise* through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) & 772.103(3). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (as described in paragraphs 55 to 65).

**Alternative 3:** *Richard Lee Enterprise*

84.     In the alternative to paragraphs 81 and 82, between 2009 and 2019,
Richard Lee was an individual who constituted an "enterprise," within the meaning of 18
U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§ 772.102(3) & 772.103(3).

> a.     Royal Palm Village, Sun Communities, American Land Lease,
> Asset Investors Partnership, and Lutz Bobo Law Firm are each a
> "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c)
> and *Fla. Stat.* § 772.103, who individually conducted, participated
> in, engaged in, and operated and managed the affairs of Richard
> Lee through a pattern of activity or criminal activity within the
> meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c) and *Fla. Stat.*
> §§ 772.102(1), 772.102(4) & 772.103(3). The pattern of racketeering
> activity or criminal activity consisted of, but was not limited to, the
> acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.*
> §§ 772.102(1)(b)(as described in paragraphs 55 to 65).

**Alternative 4:** *Lutz Bobo Law Firm Enterprise*

85.     In the alternative to paragraphs 81 and 82 between 2009 and 2019 (at a
minimum), the Lutz Bobo Law Firm constituted an "enterprise," within the meaning of
18 U.S.C. §§ 1961(4) & 1962(c) and *Fla. Stat.* §§ 772.102(3) & 772.103(3), in that it was a
legal entity.

> a.     Royal Palm Village, Sun Communities, American Land Lease,
> Asset Investors Partnership, and Lutz Bobo Law Firm are each a
> "person," within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c)
> and *Fla. Stat.* § 772.103, who individually conducted, participated
> in, engaged in, and operated and managed the affairs of the

Lutz Bobo Law Firm through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c) and *Fla. Stat.* §§ 772.102(1), 772.102(4) & 772.103(3). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (as described in paragraphs 55 to 65).

86.     At all relevant times, the enterprises alleged in paragraphs 81 through 85 (*supra*) were engaged in, and their activities affected, interstate commerce and foreign commerce.

87.     All of the acts of racketeering described in paragraphs 55 to 65 were related so as to establish a pattern of racketeering activity or criminal activity, within the meaning of 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3), in that their common purpose was to defraud Plaintiffs of money and property through the use of fraudulent forced surrender of the Plaintiffs' resale purchasers' right to assume the resale sellers' prospectus, their common result was to defraud Plaintiffs of money and property through the use of fraudulent forced surrender of the Plaintiffs' resale purchasers' right to assume the resale sellers' prospectus; Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm personally or through their agent or agents, directly or indirectly, participated in all of the acts and employed in similar methods of commission; Plaintiffs were the victims of the acts of racketeering; or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

88.     All of the acts of racketeering described in paragraphs 55 to 65 were continuous so as to form a pattern of racketeering activity in that Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo

Law Firm engaged in the acts of racketeering/crime over a substantial period of time (i.e., from 2009 through 2019) and in that the acts of racketeering/crime have become the regular way in which Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm do business and, thus, threaten to continue indefinitely.

89.     As a direct and proximate result of, and by reason of, the activities of Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm and their conduct in violation of 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c) and *Fla. Stat.* § 772.104(1). Among other things, Plaintiffs suffered damages to the extent their business or property was transferred to Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm; to the extent Plaintiffs incurred legal fees to set aside or reverse the transfers of money or property that were fraudulently made by Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm; and to the extent that Plaintiffs paid for services that provided no benefit to Plaintiffs and only inflicted harm upon them. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with costs, reasonable attorneys' fees, and reasonable experts' fees.

### Count Three – RICO; Racketeer Influenced and Corrupt Organizations Act
Violation of 18 U.S.C. § 1962(d) – *Fla. Stat.* § 772.103(4) by Defendants Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee

90.     Plaintiffs reallege and restate paragraphs 1 through 65.

91.     As alleged in Count One, one or more of the following individuals violated 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3): Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee. Any of these person(s) who violated 18 U.S.C. § 1962(c) and

*Fla. Stat.* § 772.103(3) are referred to as the "Violator(s)" for the remainder of this Count.

92.     Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee conspired with the Violator(s) to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*supra***, ¶¶** 71-75) through a pattern of racketeering activity or criminal activity (*supra***, ¶¶** 55-65) in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4). In particular, Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee intended to further an endeavor of the Violator(s) which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3)) and adopted the goal of furthering or facilitating the criminal endeavor.

93.     Plaintiffs were injured by Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee's overt acts that are acts of racketeering/crime or otherwise unlawful under the RICO statute, which included (among other acts) mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (as described in paragraphs 55 to 65).

94.     As a direct and proximate result of, and by reason of, the activities of Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee and their conduct in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c) and *Fla. Stat.* § 772.104(1). Among other things, Plaintiffs suffered damages to the extent their business or property was transferred to Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee; to the extent Plaintiffs incurred legal fees to set aside or reverse the transfers of money or property that were fraudulently made by Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee; and to the extent that Plaintiffs paid for services that provided no benefit to Plaintiffs and only inflicted harm upon them. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with costs,

reasonable attorneys' fees, and reasonable experts' fees.

### Count Four – RICO Conspiracy; Racketeer Influenced and Corrupt Organizations Act
Violation of 18 U.S.C. § 1962(d) – *Fla. Stat.* § 772.103(4) by Defendants Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm

95.     Plaintiffs reallege and restate paragraphs 1 through 65.

96.     As alleged in Count One, the following individuals violated 18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3): Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee.

### Royal Palm Village, Sun Communities, American Land Lease, and Asset Investors Partnership, or Lutz Bobo Law Firm conspired with Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee

97.     Royal Palm Village, Sun Communities, American Land Lease, and Asset Investors Partnership, or Lutz Bobo Law Firm conspired with Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*supra*, ¶¶ 71-75) through a pattern of racketeering activity or criminal activity (*supra*, ¶¶ 55-65) in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4). In particular, Royal Palm Village, Sun Communities, American Land Lease, and Asset Investors Partnership, or Lutz Bobo Law Firm intended to further an endeavor of Monica Slider, Sheri Woodworth, Belinda Lawson, or Richard Lee which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3)) and adopted the goal of furthering or facilitating the criminal endeavor.

### Sun Communities conspired with Richard Lee or Monica Slider

98.     Sun Communities conspired with Richard Lee or Monica Slider to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*supra*,

¶¶ 71-75) through a pattern of racketeering activity or criminal activity (*supra*, ¶¶ 55-65) in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4). In particular, Sun Communities intended to further an endeavor of Richard Lee or Monica Slider which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3)) and adopted the goal of furthering or facilitating the criminal endeavor.

### American Land Lease and Asset Investors Partnership conspired with Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee

99.    American Land Lease and Asset Investors Partnership conspired with Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*supra*, ¶¶ 71-75) through a pattern of racketeering activity or criminal activity (*supra*, ¶¶ 55-65) in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4). In particular, American Land Lease and Asset Investors Partnership intended to further an endeavor of Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3)) and adopted the goal of furthering or facilitating the criminal endeavor.

### American Land Lease and Asset Investors Partnership conspired with Richard Lee

100.    American Land Lease and Asset Investors Partnership conspired with Richard Lee to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*supra*, ¶¶ 71-75) through a pattern of racketeering activity or criminal activity (*supra*, ¶¶ 55-65) in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4). In particular, American Land Lease and Asset Investors Partnership intended to further an endeavor of Richard Lee which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and *Fla. Stat.* § 772.103(3)) and

adopted the goal of furthering or facilitating the criminal endeavor.

101.     Plaintiffs were injured by Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm's overt acts that are acts of racketeering/crime or otherwise unlawful under the RICO statute, which included (among other acts) acts of mail and wire fraud, 18 U.S.C. §§ 1341, 1343 and *Fla. Stat.* §§ 772.102(1)(b) (as described in paragraphs 55 to 65 *supra*).

102.     As a direct and proximate result of, and by reason of, the activities of Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm, and their conduct in violation of 18 U.S.C. § 1962(d) and *Fla. Stat.* § 772.103(4), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c) and *Fla. Stat.* § 772.103(3). Among other things, Plaintiffs suffered damages to the extent their business or property was transferred to Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee; to the extent Plaintiffs incurred legal fees to set aside or reverse the transfers of money or property that were fraudulently made by Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee; and to the extent that Plaintiffs paid for services that provided no benefit to Plaintiffs and only inflicted harm upon them. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with costs, reasonable attorneys' fees, and reasonable experts' fees.

**Count Five – Denial of Rights of Access under Americans with Disabilities Act ("ADA") –** Violations of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 *et seq.*) and related Florida statutes by Defendants Monica Slider, Royal Palm Village, and Sun Communities

103.     Plaintiff Royal Palm Village Residents, Inc., ("Royal Palm HOA") is an incorporated mobile home owner association and the legal representative under § 723.075 (1), *Fla. Stat.*, of a class of over 400 elderly current and former bona fide mobile home owners in the Park. The Park is an age 55 and older mobile home park with 380 approved mobile home lots (with a maximum of 547 lots expected).

104.     Royal Palm HOA represents all of the mobile homeowners in the Park "... in all matters relating to the Florida Mobile Home Act." *See* §§ 723.075(1) and 723.076(1); *see also Rule* 1.222, *Fla. R. Civil P.*[1]

105.     The officers and directors of the Royal Palm HOA have a fiduciary relationship to the homeowners and must discharge their duties in good faith.[2]

106.     Royal Palm HOA has the authority to initiate mediation and litigation on behalf of all of the homeowners regarding an increase in lot rental amount, reduction in services or utilities, or change of rules and regulations.[3]

---

1        § 723.075(1); *see also Rule 1.222: Fla. R. Civ. P.* Mobile Homeowners' Associations*,* which reads:

> A mobile homeowners' association may institute, maintain, settle, or appeal actions or hearings in its name on behalf of all homeowners concerning matters of common interest, including, but not limited to: the common property; structural components of a building or other improvements; mechanical, electrical, and plumbing elements serving the park property; and protests of ad valorem taxes on commonly used facilities. If the association has the authority to maintain a class action under this rule, the association may be joined in an action as representative of that class with reference to litigation and disputes involving the matters for which the association could bring a class action under this. Nothing in this Amended Complaint limits any statutory or common law right of any individual homeowner or class of homeowners to bring any action which may otherwise be available. An action under this rule shall not be subject to the requirements of rule 1.220.

*Lanca Homeowners, Inc. v. Lantana Cascade of Palm Beach, Ltd.*, 541 So.2d 1121 (Fla. 1988)("... we similarly note that the **unique features of mobile home residency call for an effective procedural format for resolving disputes between park owners and residents concerning matters of shared interest. Again, we recognize the usefulness of the policy sought to be asserted by the legislature.** Pursuant to Florida Rule of Judicial Administration 2.130(a), we adopt the following to be titled "*Mobile Homeowners' Association,*" to be numbered *Florida Rule of Civil Procedure 1.222*, and to be effective immediately....") (Emphasis Added)

2        § 723.078(2)(c)8

3   § 723.037(1)

107.     If the park owner offers the Park for sale to the general public or receives an "unsolicited" offer to purchase the Park, the Royal Palm HOA has a right to be notified of the offer, the price and the terms and conditions of sale, and permitted 45 days to execute a contract meeting the price, terms and conditions.[4] Royal Palm HOA has the express statutory right to negotiate for, acquire, and operate the mobile home park on behalf of the mobile home owners.

108.     Royal Palm HOA realleges and restate paragraphs 1 through ??? 12, 16-21, 22, 27-32.

109.     The Plaintiff mobile home owners are "elderly persons" as defined by Section 825.101( 4), *Fla. Stat.*, as persons " ... 60 years of age or older who is suffering from the infirmities of aging as manifested by advanced age or organic brain damage, or other physical, mental, or emotional dysfunctioning, to the extent that the ability of the person to provide adequately for the person's own care or protection is impaired." The Plaintiff mobile home owners have mobility, balance, gait, vision, and hearing difficulties. When traveling about in public, many Plaintiff mobile home owners require the use of either walking canes or sticks, walkers, wheelchairs, audiovisual devices, and hearing aids. Consequently, many Plaintiff mobile home owners are "physically disabled," as defined by all applicable Florida and United States laws, and a member of the public whose rights are protected by these laws.

110.     Plaintiff mobile home owners suffer from low vision and age-related cognitive decline as a "qualified disability" under the ADA as defined in 42 U.S.C. §12012 (1)(A) and in 42 U.S.C. 3602, §802(h). They are substantially limited in performing one or more major life activities, including but not limited to accurately visualizing their world, adequately traversing obstacles and walking without assistance.

111.     The Park clubhouse, recreation center, swimming pool, fitness center,

---

4        § 723.071(1)(a)

shuffleboard courts, and horseshoe pits are public accommodations, open to the public, which is intended for nonresidential use and whose operation affects commerce.

112.     The Plaintiffs live in the Park and visit the Park facilities on a regular basis. Plaintiffs regularly encounter barriers (both physical and intangible) that interfered with - if not outright denied - their ability to use and enjoy the goods, services, privileges and accommodations offered at the Park. Plaintiffs personally encountered the following barriers at the Facility:

a)     The only ramp located at the Clubhouse parking area is improperly configured and contains no guide curbs. Designated Wheelchair Parking Spaces at the Pool and gym must be re-drawn and re-painted in accordance with ADA regulations to allow for a proper wheelchair loading and unloading;

b)     On numerous occasions during their visits to the Clubhouse, Plaintiffs experienced problems when transferring onto their wheelchair from their vehicle because of the configuration and side-slope of the designated parking space and access aisle located next to it;

c)     During many visits to the Park operations center located just inside the entrance to the Park, Plaintiffs have attempted but been unable to enter the operations center because the door of the office is too narrow for a wheelchair;

d)     Plaintiffs have been unable to enter the Park operations center by using an alternative entrance. Plaintiffs have been unable to place their rental payment into the box located outside of the operations center and have had to return to place their payment in the box;

e)     The entrances to the Park Clubhouse and operations center have no

wheelchair-friendly automated electric doors and entry/exit pads. The Clubhouse should be equipped with additional automated electric doors and entry/exit pads in the event of an emergency evacuation;

f) The Clubhouse stage lacks a wheelchair ramp to the stage for the disabled to participate in numerous Community activities;

g) The bathroom stalls were re-configured for handicap accessibility during the Park Clubhouse remodelling phase approximately two years ago; however, the actual doors to enter or exit the women's washroom is impossible for a wheelchair bound individual to open from the inside without assistance. An automated electric door would eliminate this problem for both men's and women's washrooms. The restrooms also lack necessary wheelchair clearances to use the sink. Plaintiffs experienced difficulty on many occasions while trying to use the restroom in the four years preceding this action;

h) None of the Park pools or hot tub have a lift. The pool decks are not wheelchair accessible. The gates for the pool decks will not allow wheelchair users the ability to enter or exit the pool decks without assistance;

i) The entrance to the gym is not equipped with automated electric doors to allow wheelchair entry or exit without assistance;

113. Plaintiffs were, and continue to be deterred from visiting the Clubhouse because they know that the Clubhouse's goods, services, facilities, privileges, advantages, and accommodations deny full and equal access to Plaintiffs due to their physical disabilities. Plaintiffs have learned that the following additional barriers to their full and

equal access exist at the facility, each of which relates to his disabilities:

**Site Entrance Signage**

    a)    Site informational signage was not provided directing to the accessible entrance and route of travel.

    b)    Tow-away warning signage was not provided visible from the street entrance or accessible parking space.

**Accessible Parking**

    c)    Van accessible signage was not provided for the van accessible parking space.

    d)    Accessible parking access aisles was not outlined in blue.

    e)    Accessible parking signage mounted on the pole is not 80" minimum above the surface.

**Exterior Accessible Routes**

    f)    A minimum of one accessible route was not provided from the public way to the accessible entrance.

    g)    Sidewalk has raised lips that exceed 1/4" in height.

    h)    Ramp at the end of the access aisle does not have edge protection on both sides of the ramp and exceeds 8.33%.

**Accessible Doors**

    i)    Entrance door thresholds exceed 1/2″ in height.

    j)    Entrance door landings exceed 2% slope.

    k)    Entrance doors do not have the required smooth kick plate 10" high on the bottom of the doors.

**Restrooms**

    l)    Side grab bars are not 48" long and extending a minimum of 24" in

front of the toilet.

m)   Rear grab bar was not properly located on the wide side of the toilet.

n)   Soap dispenser was not located to be 40" maximum above floor to operable parts.

o)   Toilet paper dispenser was not located to be 7"- 9" in front of toilet.

p)   Plumbing and sharp objects under sink were not properly protected.

q)   Toilet was not offset to be 16"-18" from side wall.

r)   Proper floor clear area was not provided in front of the toilet for transfer space.

**General**

t)   There are no fire alarms, strobes, horns or sprinkler system in the main social events or large congregational hall.

114.   Plaintiffs live at the Park and must have ongoing access to the Clubhouse.

115.   Defendants Monica Slider, Royal Palm Village, and Sun Communities knew or should have known that these elements and areas of the Clubhouse were inaccessible, violate state and federal law, and interfere with or deny access to the physically disabled. Moreover, Defendants Monica Slider, Royal Palm Village, and Sun Communities have the financial resources to remove these barriers from the Park without much difficulty or expense, and make the Park accessible to the physically disabled. To date, however, Defendants Monica Slider, Royal Palm Village, and Sun Communities refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse noncompliance.

116.    At all relevant times, Defendants Monica Slider, Royal Palm Village, and Sun Communities have possessed and enjoyed sufficient control and authority to modify the Park to remove impediments to wheelchair access and to comply with the 2010 Standards for Accessible Design. Defendants Monica Slider, Royal Palm Village, and Sun Communities have not removed such impediments and have not modified the Park to conform to accessibility standards. Defendants Monica Slider, Royal Palm Village, and Sun Communities have intentionally maintained the Park in its current condition and have intentionally refrained from altering the Park so that it complies with the accessibility standards.

117.    Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

118.    Defendants Monica Slider, Royal Palm Village, and Sun Communities discriminated against Plaintiffs by denying them "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the Clubhouse during each visit and each incident of deterrence.

**Failure to Remove Architectural Barriers in an Existing Facility**

119.    The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

120.    When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. *Id*. 42 U.S.C. § 12182(b)(2)(A)(v).

121.    Here, Plaintiffs allege that Defendants Monica Slider, Royal Palm Village, and Sun Communities can easily remove the architectural barriers at the Park without much difficulty or expense, and that Defendants Monica Slider, Royal Palm Village, and Sun Communities violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

122.    In the alternative, if it was not "readily achievable" for Defendants Monica Slider, Royal Palm Village, and Sun Communities to remove the Park's barriers, then Defendants Monica Slider, Royal Palm Village, and Sun Communities violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

**Failure to Make an Altered Facility Accessible**

123.    On information and belief, Defendants Monica Slider, Royal Palm Village, and Sun Communities have made substantial alterations to the Clubhouse since 2015 and have failed to make the altered Clubhouse accessible.

124.    Plaintiffs have been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiffs are entitled to have reasonable attorneys' fees, costs and expenses paid by Defendants Monica Slider, Royal Palm Village, and Sun Communities.

WHEREFORE, Plaintiffs demand judgment against Defendants Monica Slider, Royal Palm Village, and Sun Communities and request injunctive and declaratory relief.

**Demand For Jury Trial**

Plaintiff mobile home owners demand a jury trial as to all issues triable by jury in this case.

**Relief Requested (All Counts)**

Wherefore, as to all counts, Plaintiff mobile home owners request that:

a.      Judgment be entered in favor of Plaintiff mobile home owners and against Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm jointly and severally, in the amount of Plaintiffs' damages to be proven at trial;

b.      Plaintiff mobile home owners be awarded treble damages to the extent permitted by 18 U.S.C. § 1964(c) and § 772.104, *Fla. Stat.*;

c.      Plaintiff mobile home owners be awarded punitive damages to the extent permitted by § 768.72, *Fla. Stat.*;

d.      Plaintiff mobile home owners be awarded prejudgment interest on the amount of damages or losses that Plaintiff mobile home owners have sustained;

e.      Plaintiff mobile home owners be awarded injunctive relief under Rule 65, *Fed. R. Civ. P.*;

f.      The Court issue a declaratory judgment that Defendants Monica Slider, Royal Palm Village, and Sun Communities violated the Plaintiff mobile home owners' rights as guaranteed by the ADA;

g.      Plaintiff mobile home owners be awarded reasonable costs and attorneys' fees under 18 U.S.C. § 1964(c);

h.      Plaintiff mobile home owners be awarded other and further equitable and legal relief as the Court finds just and necessary.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 3, 2019 I electronically filed a copy of this Amended Complaint with the Clerk of Court using the CM/ECF System which issues service upon the parties of record.

/s/ Daniel W. Perry
DANIEL W. PERRY
FB # 376671
4767 New Broad St. #1007
Orlando, FL 32814-6405
Ph 407-894-9003
dan@danielperry.com
Attorney for Plaintiffs
