IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GENE ASBURY, JAMES LEMONNIER,
BONNIE LOHMEYER, FRED OSIER,
HARRY RUSH, LAURIE SKEMP, and
ROYAL PALM VILLAGE RESIDENTS,
INC., on behalf of themselves, the class of
current and former mobile homeowners in
the Park and all others similarly situated,

Plaintiffs,

Vs.

MONICA SLIDER, SHERI WOODWORTH,
BELINDA LAWSON, SUN COMMUNITIES,
INC., ROYAL PALM VILLAGE, LLC,
AMERICAN LAND LEASE, INC.,
ASSET INVESTORS OPERATING
PARTNERSHIP, L.P., RICHARD LEE,
and LUTZ, BOBO & TELFAIR, P.A.,
d/b/a Lutz, Bobo, Telfair, Eastman &
Lee, f/k/a Lutz, Webb & Bobo, P.A.,

Defendants.
_____/

CASE NO. 8:19-CV-00874-CEH-SPF

CLASS ACTION REPRESENTATION
AND DEMAND FOR JURY TRIAL
INJUNCTIVE RELIEF SOUGHT

**SECOND AMENDED COMPLAINT**

Plaintiffs Gene Asbury, James LeMonnier, Bonnie Lohmeyer, Fred Osier,

Harry Rush, Laurie Skemp, and Royal Palm Village Residents, Inc., as putative class

representatives on behalf of themselves, the class of current and former mobile

homeowners in the Royal Palm Village Mobile Home Park and all others similarly

situated, by and through the undersigned counsel, bring this Second Amended Complaint

against Defendants Monica Slider, an individual, Sheri Woodworth, an individual, Belinda

Page 1

Lawson, an individual, Sun Communities, Inc., a foreign (Maryland) corporation, Royal Palm Village, LLC, a foreign (Delaware) limited liability company, American Land Lease, Inc., a foreign (Delaware) corporation, Asset Investors Operating Partnership, L.P., a foreign (Michigan) limited partnership, Richard Lee, an individual, and Lutz, Bobo & Telfair, P.A., d/b/a Lutz, Bobo, Telfair, Eastman & Lee, f/k/a Lutz, Webb & Bobo, P.A., a Florida Corporation, collectively referred to in this Second Amended Complaint as "Defendants," and alleges:

<b>PARTIES:</b>

1.      Plaintiffs Gene Asbury, James LeMonnier, Bonnie Lohmeyer, Fred Osier, Harry Rush, and Laurie Skemp are individuals who reside in Florida and are bona fide mobile home owners who rent or lease the lot underneath their home for residential use within the Royal Palm Village Mobile Home Park ("Park") at 3000 U.S. Highway 17-92 W, Haines City, Polk County, Florida. Plaintiffs Gene Asbury, James LeMonnier, Bonnie Lohmeyer, Fred Osier, Harry Rush, and Laurie Skemp are the putative class representatives and act on behalf of themselves, the class of current and former mobile homeowners in the Park and all others similarly situated. They are collectively referred to in this Second Amended Complaint as the "Individual Plaintiffs," "Plaintiff mobile home owners," or the "putative class representatives."

2.      Plaintiff Royal Palm Village Residents, Inc., ("Royal Palm HOA") is a Florida not-for-profit corporation with its principal place of business located in the Park at 3000 US Highway 17-92 West, Polk County, Haines City, Florida. The Park is an age 55 and older mobile home park with 396 approved mobile home lots (with a maximum of 547 lots expected). Royal Palm HOA is formed and operates in compliance with §§ 723.075 through 723.079, *Fla. Stat.* The Royal Palm HOA is the putative class representative and acts on behalf of itself, the class of current and former mobile homeowners in the Park who seek injunctive or declaratory relief. It is referred to in this Second Amended

Complaint as the "Royal Palm HOA," or the "putative class representative for injunctive or declaratory relief."

3.      Defendant Monica Slider is an individual who currently resides in Orange County, Florida. In her LinkedIn.com Internet web-profile, Monica Slider is identified as the Regional Vice President of Operations & Sales at Defendant Sun Communities, Inc., since February 2010 with her principal place of business located in Orlando, Florida. Monica Slider is an operator of the Park because she has authority to act as the park owner in matters relating to the administration and management of the Park, including, but not limited to, authority to make decisions relating to the Park.

4.      Defendant Sheri Woodworth is an individual who currently resides in Southfield, Michigan. In her LinkedIn.com Internet web-profile, Sheri Woodworth is identified as the Division Vice President, Sales and Operations at Sun Communities, Inc., since December 2011 with her principal place of business located at 27777 Franklin Road, Suite 200, Southfield, Michigan. Sheri Woodworth is an operator of the Park because she has authority to act as the park owner in matters relating to the administration and management of the Park, including, but not limited to, authority to make decisions relating to the Park.

In her LinkedIn.com Internet web-profile, Sheri Woodworth further describes her job responsibilities at Sun Communities:

> Key driver of success in both sales and operational responsibilities for 43 communities with emphasis on driving home sales, resident relations, resident retention and creating a superior customer experience. Develop quarterly and annual sales plan and in support of organizational strategy and objectives; recommend sales strategies for improvement based on market research and competitor analysis; build, train, develop, and manage sales and operations teams capable of carrying out company initiatives; partner with management team to ensure the best possible service and effective communications; oversee operating and capital budgets for the communities in portfolio; ensure capital investments are tied to demonstrable returns in accordance with company return on investment

thresholds; full P & L oversight for $85M+ in annual revenue and 200+ people; ensure best-in-class community operations and appearance are maintained, including amenities, lifestyle events, for-sale inventory and top talent; coach, train, develop Community Managers and sales teams to carry out community and resident initiatives.

<https://www.linkedin.com/in/sheri-woodworth-ab77026/>

5.      Defendant Belinda Lawson is an individual who currently resides in Polk County, Florida. In her LinkedIn.com Internet web-profile, Belinda Lawson is identified as the Park manager and an employee of Defendant Sun Communities, Inc., since February 2016 with her principal place of business located at the Park. Belinda Lawson is an operator of the Park because she has authority to act as the park owner in matters relating to the administration and management of the Park, including, but not limited to, authority to make decisions relating to the Park.

6.      Defendant Sun Communities, Inc. ("Sun Communities"), is a NYSE publicly traded foreign (Maryland) corporation. Sun Communities′ principal place of business is located at 27777 Franklin Road, Suite 200, Southfield, Michigan. Sun Communities also has regional property management offices in the Middle District of Florida. Sun Communities is also engaged in business at the Park. Sun Communities owns the Park directly, or indirectly through its subsidiaries, Defendants Asset Investors Operating Partnership, L.P., and Royal Palm Village, LLC.

7.      Defendant Royal Palm Village, LLC ("Royal Palm Village"), is a foreign (Delaware) limited liability company with its principal place of business located at 27777 Franklin Road, Suite 200, Southfield, Michigan. Royal Palm Village is also engaged in business at the Park. Royal Palm Village is identified in official court records of the Polk County Clerk of Court as the owner and operator of the Park.

8.      Defendant American Land Lease, Inc. ("American Land Lease"), was a foreign (Delaware) corporation with its principal place of business located at 380 Park

Place Blvd., Suite 200, Clearwater, Florida. American Land Lease was the owner and operator of the Park. American Land Lease was dissolved effective September 25, 2015.

9.      Defendant Asset Investors Operating Partnership, L.P., ("Asset Investors Partnership"), is a foreign (Michigan) limited partnership with its principal place of business located at 27777 Franklin Road, Suite 200, Southfield, Michigan. Asset Investors Partnership is the managing member of Defendant Royal Palm Village. Asset Investors Partnership directly or indirectly owns the Park.

10.     Defendant Richard Lee is an individual who currently resides in Leon County, Florida. Richard Lee is a licensed Florida lawyer since 1980, a partner or an employee or shareholder of Defendant Lutz, Bobo & Telfair, P.A., d/b/a Lutz, Bobo, Telfair, Eastman & Lee, with its principal place of business located at 2155 Delta Blvd., Suite 201B, Tallahassee, Florida.

11.     Defendant Lutz, Bobo & Telfair, P.A. ("Lutz Bobo Law Firm"), d/b/a Lutz, Bobo, Telfair, Eastman & Lee, f/k/a Lutz, Webb & Bobo, P.A., is a Florida corporation with its principal place of business located at 2155 Delta Blvd., Suite 201B, Leon County, Tallahassee, Florida and also at One Sarasota Tower, Two North Tamiami Trail, Fifth Floor, Sarasota County, Florida. The Lutz Bobo Law Firm is identified in official court records of the Polk County Clerk of Court as attorney of record for Sun Communities, Asset Investors Partnership, American Land Lease, and  Royal Palm Village as far back as 2002.

## JURISDICTION AND VENUE:

12.     This action is brought under the federal Racketeer Influenced and Corrupt Organization ("RICO") statute, 18 U.S.C. § 1961, *et seq*. Jurisdiction is vested in this Court by virtue of 28 U.S.C. § 1331.

13.     In the alternative, under 18 U.S.C. § 1965(a), this Court has personal

jurisdiction over each defendant because each defendant resides, is found, has an agent, or transacts his/her affairs in this district.

14.     To the extent any defendant is found not to be subject to this Court's personal jurisdiction under 18 U.S.C. § 1965(a), this Court may exercise personal jurisdiction over the defendant(s) under 18 U.S.C. § 1965(b) because the ends of justice require that the Court exercise personal jurisdiction over any defendant who claims not to have sufficient minimum contacts with the forum.

15.     Defendants engaged in a multi-district conspiracy to defraud Plaintiffs. The Court has personal jurisdiction over most, if not all, of the alleged co-conspirators, and there is no other district that may exercise personal jurisdiction over all Defendants.

16.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this District and because a substantial part of the events or omissions giving rise to these claims occurred in this District and a substantial part of the property that is the subject of this action is situated in this District.

## CLASS REPRESENTATION ALLEGATIONS:

17.     Plaintiffs Gene Asbury, James LeMonnier, Bonnie Lohmeyer, Fred Osier, Harry Rush, and Laurie Skemp, and Royal Palm HOA bring this class action on behalf of themselves individually and all others similarly situated, under *Fed. R. Civil P.* 23.

18.     The proposed Class consists of all persons who are or were mobile home owners in the Park from 2009 to the present and were victimized by the fraudulent and conspiratorial acts of Defendants Sun Communities, Asset Investors Partnership, American Land Lease, and Royal Palm Village since 2015 to deceive over 400 elderly mobile home owners and the representative Royal Palm HOA that their mobile home park was lawfully transferred or purchased by the Defendants Sun Communities and Royal Palm Village. Subsequently, the Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, and Belinda Lawson acted and conspired to circumvent

statutory regulations under the Florida Mobile Home Act and engaged in further deceit:

- Defendants Sun Communities and Royal Palm Village deceived and compelled the Royal Palm HOA to enter into an oppressive and illegal five year lot rental agreement;

- Defendants Sun Communities and Royal Palm Village promised to spend $1,000,000 on maintenance, repair, and replacement of roads, seawalls and common areas as an inducement to enter into the five year lot rental agreement;

- Defendants Sun Communities, Royal Palm Village, and Monica Slider required resale home purchasers to pay a $399 "Home Prep Fee" in violation of Florida Law;

- Defendants Sun Communities and Royal Palm Village materially misrepresented that lot rental categories (water, preserve, oversize) were a legal basis for discriminatory lot rental increases - "water" was really retention pond. Preserve" was really raw wetlands or scrub land - with associated premium lot rents; and

- Defendants Sun Communities and Royal Palm Village mislead elderly and disabled Plaintiff mobile home owners that the Park clubhouse and facilities are ADA compliant.

19.    The Class includes those Plaintiff current or former mobile home owners who have been forced or expect to be forced to pay increased lot rental and ad valorem tax pass-ons associated with: the illegal purchase of the Park; discriminatory rental increases from illegal characterization of "on water" and "on preserve" or oversize lots; and a $399 "Home Prep Fee" in violation of § 723.031(3), *Fla. Stat.*

20.    The Class includes those elderly and disabled Plaintiff current or former

mobile homeowners who have suffered the deprivation or expect to suffer the deprivation of a handicap accessible Park clubhouse, facilities, and common areas.

21.     Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that market or sell homes in the Park, the judge(s) assigned to this case, and the attorneys of record in this case. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

22.     This action is properly brought as a class action because:

(a)     The proposed Class is so numerous and geographically dispersed throughout the United States and Canada that the joinder of all Class Members is impracticable. The number of Class members is approximately 400 persons, and is expected to grow as homes in the Park are resold. Many of the Class Members are seasonal residents of Florida and reside in other portions of the United States and Canada during the remainder of the year;

(b)     The disposition of Plaintiffs' and putative Class Members' claims in a class action will provide substantial benefits to both the parties and the Court;

(c)     The proposed Class is ascertainable and there is a well-defined community of interest in the questions of law or fact alleged in this Second Amended Complaint since the rights of each proposed Class Member were infringed or violated in similar fashion and uniform manner;

(d)     There are questions of law and fact common to the proposed Class which predominate over any questions that may affect particular Class Members. Common questions of law and fact include but are not limited to:

1. Whether Defendants violated 18 U.S.C. § 1962;

2. Whether Defendants violated Title 3 of the ADA - 42 U.S.C. § 12181 *et seq.*;

3. Whether Plaintiffs and Class Members have been harmed and the proper measure of relief;

4. Whether Plaintiffs and Class Members are entitled to an award of treble damages, punitive damages, attorneys' fees and costs; and

5. Whether Plaintiffs and Class Members are entitled to equitable relief, and if so, the nature of the relief.

(e) Plaintiff mobile home owners' claims are typical of the claims of the members of the proposed Class. Plaintiff mobile home owners and Class Members have been injured by the wrongful practices of Defendants. Plaintiff mobile home owners' claims arise from the practices and conduct that give rise to the claims of all Class Members and are based on the legal theories;

(f) Plaintiff mobile home owners will fairly and adequately protect the interests of the Class in that they have no interests antagonistic to those of the other Class Members, and Plaintiff mobile home owners have retained an attorney experienced in consumer class actions and complex litigation as counsel;

(g) A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

1. Given the size of individual Class Members' claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

2.      This action will promote an orderly and expeditious administration and adjudication of the proposed Class claims, economies of time, effort and resources will be fostered and uniformity of decisions will be insured;

3.      Without a class action, Class Members will continue to suffer damages, and Defendants' violations of law will proceed without remedy while Defendants continue to reap and retain the proceeds of their wrongful conduct; and

4.      Plaintiffs know of no difficulty that will be encountered in the management of this litigation which would preclude class certification.

23.     Defendants and their agents had, or have access to, address information for the Class Members, which may be used for the purpose of providing notice of the class action.

24.     Plaintiffs Gene Asbury, James LeMonnier, Bonnie Lohmeyer, Fred Osier, Harry Rush, and Laurie Skemp seek damages, equitable relief, attorneys' fees, and costs on behalf of the Class on grounds generally applicable to the entire proposed Class.

25.     Plaintiff Royal Palm HOA seeks declaratory and injunctive relief on behalf of the Class on grounds generally applicable to the entire proposed Class.

## BACKGROUND

**DEFENDANTS′ CONCERTED DECEPTIVE SCHEME:**

**Purchase of the Park Under an ″Unsolicited Offer″**

26.     On December 18, 1991 the Royal Palm HOA recorded its Notice of Mobile Homeowners Association Right to Purchase the Park in compliance with § 723.076, *Fla. Stat*. A copy of the notice is attached as Exhibit A and adopted. On March 14, 2013 the Royal Palm HOA recorded another Notice of Mobile Homeowners Association Right to Purchase the Park in compliance with § 723.076, *Fla. Stat*. A copy of the notice is attached as Exhibit B and adopted.

27.     In an August 6, 2014 letter to the Royal Palm HOA, American Land Lease President and CEO David Lentz explained that affiliates of Sun Communities agreed as of July 30, 2014 to acquire American Land Lease. Exhibit C is adopted. Sun Communities took over management and operation of the Park on or about January 6, 2015.

28.     Defendants Sun Communities, Royal Palm Village, and American Land Lease falsely represented to the representative Plaintiff Royal Palm HOA and over 400 elderly homeowners that the purchase of the Park had been arranged through an "unsolicited offer."

29.     The offer to purchase the Park was not ″unsolicited.″ The purchase was arranged through brokers, agents, or attorneys for Sun Communities, American Land Lease, Asset Investors Partnership, and Royal Palm Village.

30.     Sun Communities, American Land Lease, and Royal Palm Village concealed that the offer was solicited; the consequence of which frustrated the Royal Palm HOA's statutory right of first refusal to match the contract terms and conditions under § 723.071(1), *Fla. Stat*.

31.     The sale by Defendants Royal Palm Village, American Land Lease, and
Asset Investors Partnership to Sun Communities was not exempt from the requirements
of Section 723.071(1), *Fla. Stat.*

**Deceived the Royal Palm HOA to Enter Into an Oppressive and Illegal Agreement**

32.     On or about September 16, 2015 Defendants Sun Communities, Royal
Palm Village, and Monica Slider deceived the Royal Palm HOA to circumvent the normal
90 day advance written notice, statutory disclosure, and mediation negotiation process
under §723.037, *Fla. Stat.*, and to instead enter into a five year lot rental agreement
increasing the lot rental by $16 in 2016, $17 in 2017, $18 in 2018, $19 in 2019 and $20
in 2020. The five year lot rental agreement was drafted by Richard Lee and the Lutz
Bobo Law Firm. A copy of the five year lot rental agreement is attached as Exhibit D and
adopted.

33.     In paragraph 3 of the five year lot rental agreement, the Defendants Sun
Communities, Royal Palm Village, Monica Slider, Richard Lee and Lutz Bobo Law Firm
caused the agreement to include language which eliminated the Royal Palm HOA's rights
to petition for mediation and to initiate a civil lawsuit, in violation of Chapter 723, *Fla.
Stat.*

**Defendants Promised to Spend $1,000,000 on The Park as Inducement**

34.     In 2015, in an effort to induce the Royal Palm HOA to enter into the
five year agreement with Defendants Sun Communities and Royal Palm Village, then
Park manager Tim Bias told the Royal Palm HOA and elderly homeowners at a Park
homeowners' meeting  that the Defendants Sun Communities and Royal Palm Village
would spend $1,000,000 on the repair and upgrade of the clubhouse, facilities, and
common areas, including roadways and sea walls.

**Sun Communities Require Illegal $399 "Home Prep Fee" For All Resale Homes**

35.     In June 21, 2019 correspondence sent via United States mail from James Hoekstra, Senior Vice President of Operations and Sales at Sun Communities to putative Class Representative Fred Osier, Mr. Hoekstra conceded that Defendants **Sun Communities and Royal Palm Village requires the payment of a $399 "Home Prep Fee" for all resale homes** (described as "brokered" homes) in Parks owned or operated by Sun Communities through its wholly owned and controlled subsidiary, Sun Homes, Inc. (identified in the correspondence simply as "Sun Homes"). **This required "Home Prep Fee" violates § 723.031 (3), *Fla. Stat.*,** which reads: **"The homeowner shall have no financial obligation to the park owner as a condition of occupancy in the park, except the lot rental amount**...." (Emphasis Added). A copy of the June 2019 letter is attached as Exhibit E and adopted.

**Discriminatory Lot Rental Categories: "Water," "Preserve," "Oversize"**

36.     Defendants Sun Communities and Royal Palm Village provided the Plaintiff mobile home owners via United States mail and the Internet <https://www. suncommunities.com/community/royal-palm-village/> the following description of the "waterways": Royal Palm Village 55+ community **welcomes everyone from fishermen to nature enthusiasts with its sparkling lagoons, tranquil canals,** ...." (Emphasis Added). The Amenities are further described, in pertinent part, as including: "waterfront sites," "street facing sites", and "wooded sites."

37.     Defendant Sun Communities and Royal Palm Village's lot rental categorization of "on water" is false and fraudulent. The Park "on water" categorization is described on the website maintained by or referenced by Defendant Sun Communities and Royal Palm Village as **"venetian-like canals," "sparkling lagoons"** or **"tranquil canals."** They are simply retention ponds. During substantial periods of the year those retention

ponds are eyesores and a drag on access, use, and enjoyment of the property or Park.

38.     Lots categorized as facing "natural preserve" are also false and fraudulent. There are no natural preserves in the vicinity of any such lots; the land falsely attributed to a "natural preserve" is simply ordinary scrub-lands or wetlands with accumulated rubbish and debris.

39.     In 2016, Defendants Monica Slider and Sun Communities changed the lot rental categories in the Park to from three categories to eight categories, including standard, corner, and oversized lots. In pertinent part, lots facing or in proximity to a "natural preserve" (or scrubland) currently pay a premium of $59 per month or $708 per year. "Water" (or retention pond) lots pay a premium of $95 per month or $1,140 per year.

40.     On or about October 15, 2017 Royal Palm HOA President, Board member, and elderly homeowner Jim LeMonnier asked Defendant Monica Slider if Sun Communities owned the areas categorized as "natural preserve." Monica Slider replied that Sun Communities owns those grounds, also.

**Sun Communities Misleads Home Owners Clubhouse Facilities are ADA Compliant**

41.     Since 2015 Defendants Sun Communities, Royal Palm Village, and Monica Slider actively misled the Royal Palm HOA and the elderly Plaintiff mobile home owners that the Defendants Sun Communities and Royal Palm Village were not legally required to ensure that the clubhouse and the park facilities were compliant with the ADA. When asked by the Royal Palm HOA and the Plaintiff mobile home owners at various homeowner meetings in the clubhouse in 2015 and 2016, the Defendants Sun Communities and Royal Palm Village would respond through their Park employees that the Clubhouse and facilities are not required to comply with the ADA since their construction predated any such legal requirement; ignoring that the Clubhouse and Park facilities are public accommodations.

**Mail and Wire Fraud**

42.     Defendants Sun Communities, American Land Lease, Asset Investors Partnership, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, and the Lutz Bobo Law Firm (and their co-conspirators/agents) engaged in a scheme to: unlawfully defraud the Plaintiff mobile home owners of their representative Royal Palm HOA's exercise of a statutory right to purchase the Park on behalf of the Plaintiff homeowners; to pay fraudulently increased lot rental; to pay discriminatory rental increases from illegal characterization of "on water" and "on preserve" or oversize lots; deceive the representative Royal Palm HOA to enter into an oppressive and illegal five year lot rental agreement; the misrepresentation of the inducement to enter into the five year agreement; resale home purchasers are required to pay a $399 "Home Prep Fee" in violation of § 723.031(3), *Fla. Stat.;* and the misrepresentation that the Park clubhouse and facilities are ADA compliant.

43.     Defendants Sun Communities, American Land Lease, Asset Investors Partnership, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, and the Lutz Bobo Law Firm  (and their co-conspirators/agents) could foresee that the U.S. Postal Service and interstate wires would be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in or carrying out the scheme, within the meaning of 18 U.S.C. §§ 1341 and 1343.

44.     In particular, Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, and the Lutz Bobo Law Firm, (and their co-conspirators/agents) knew or could foresee that the U.S. Postal Service and interstate wires would be used to receive and/or deliver, *inter alia,* the increased lot rental notices used by the Defendants Sun Communities and Royal Palm Village which incorporated fraudulent representations regarding the Plaintiffs' legal right to change or impose lot rental categories and invoices for payment of increased lot rental.

45.     Defendants Sun Communities, American Land Lease, Asset Investors Partnership, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, and the Lutz Bobo Law Firm  (and their co-conspirators/agents) acting singly and in concert, personally or through their agents, used the U.S. Postal Service and interstate wires or caused the U.S. Postal Service or interstate wires to be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out a scheme to defraud the Plaintiff mobile home owners within the meaning of 18 U.S.C. §§ 1341 and 1343.

46.     It is not possible for Plaintiff mobile home owners to plead with particularity all instances of mail and wire fraud that advanced, furthered, executed, and concealed the scheme because the particulars of many communications are within the exclusive control and within the exclusive knowledge of Defendants Monica Slider, Sheri Woodworth, Belinda Lawson, and Royal Palm Village,  (and their co-conspirators/agents) and other presently unknown individuals. Plaintiff mobile home owners and the Royal Palm HOA know that Defendants Monica Slider, Sheri Woodworth, Belinda Lawson, and Royal Palm Village,  (and their co-conspirators/agents) have communicated using the U.S. Postal service with:

    a.    regulators in the Florida Department of Business and Professional Regulation related to the approval, recordation, and dissemination of lot rental increase notices;

    b.    the putative class of mobile home owners related to initial sales and closing documents, including current and future payment of increased lot rental and lot rental categorization (i.e., "on water," "on preserve" or "oversize"lots), and the $399 "Home Prep Fee";

    c.    the putative class of mobile home owners related to ongoing annual rent increases and increased ad valorem tax pass-ons, and changes

to rules and regulations).

Documents related to those communications using the U.S. Postal service are in the control and custody of the Defendants Monica Slider, Sheri Woodworth, Belinda Lawson, and Royal Palm Village,  (and their co-conspirators/agents) and are expected to be the focus of discovery.

47.     By way of example, however, Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, Lutz Bobo Law Firm, American Land Lease, and Asset Investors Partnership (and their co-conspirators/ agents) specifically used the U.S. Postal Service or interstate wires or caused the U.S. Postal Service or interstate wires to deliver each and every telephone call, email, and letter described in paragraphs (supra, ¶¶ 44-46).

48.     Upon information and belief, some of the wire communications described above occurred between persons in the same state but crossed interstate borders by reason of the technology and other mechanisms used to transmit the communication.

49.     Each and every use of the U.S. Postal Service or interstate wires described above was committed by Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, Lutz Bobo Law Firm, American Land Lease, and Asset Investors Partnership and their co-conspirators/agents with the specific intent to defraud Plaintiff mobile home owners or for obtaining the money or property of Plaintiff mobile home owners by means of false or fraudulent pretenses, representations, material omissions or promises described in paragraphs (supra, ¶¶ 26-41). Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, Lutz Bobo Law Firm, American Land Lease, and Asset Investors Partnership and their co-conspirators'/agents' acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 constitute racketeering activity as defined by 18 U.S.C. § 1961(1)(B) or "criminal activity" as defined by *Fla. Stat.* § 772.102(b).

50.     Plaintiff mobile home owners purchased their mobile homes and entered into a long-term lot rental agreement  (Exhibit F is adopted) not knowing that the Defendants Sun Communities, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, Lutz Bobo Law Firm, American Land Lease, and Asset Investors Partnership fraudulently imposed or changed lot rental categories, and they were forced to pay a higher lot rental, pay an illegal $399 "Home Prep Fee" on their resale home purchase in violation of § 723.031(3), *Fla. Stat.* and suffer significant reduction in the use, access, or enjoyment of the Park and their home.

51.     Defendants Sun Communities, American Land Lease, Asset Investors Partnership, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, and the Lutz Bobo Law Firm's scheme to defraud was designed to victimize elderly homebuyers. As such, Defendants intended to take advantage of Plaintiff mobile home owners' perceived ignorance or gullibility and intended to prey on Plaintiff mobile home owners' infirmities.

**Claims**

**Count One – RICO; Racketeer Influenced and Corrupt Organizations Act**
Violation of 18 U.S.C. § 1962(c) – by Defendants Monica Slider, Sheri
Woodworth, Belinda Lawson, and Richard Lee

***Royal Palm Village Enterprise***

52.     Plaintiffs reallege and restate paragraphs 1 through 51.

53.     Between 2009 and 2019 (at a minimum), Royal Palm Village constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), in that it was a legal entity.

          a.     Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard
                  Lee are each a "person," within the meaning of 18 U.S.C. §§
                  1961(3) and 1962(c), who individually conducted, participated in,

engaged in, and operated and managed the affairs of Royal Palm Village, through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341 and 1343 (described in paragraphs 42 to 51).

**Alternative 1:** *Royal Palm Village Mobile Home Park Enterprise*

54.     In the alternative to paragraph 53, Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), in that they were "a group of individuals associated in fact" (referred to in this Second Amended Complaint as the "*Royal Palm Village Mobile Home Park Enterprise*").

a.     Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm shared the common purposes of defrauding Plaintiffs of money or property through the use of the fraudulent and illegal sale of the Park in violation of Florida Law; misrepresentation that Defendants Sun Communities and Royal Palm Village would spend $1,000,000 on the Park as an inducement for the representative Royal Palm HOA entering into an oppressive and illegal five year agreement; $399 Home Prep Fee" in violation of Florida Law; and discriminatory premium rental categories for fraudulent and misrepresented "water" (really retention ponds) and "preserve" (scrubland) facing lots; and misrepresenting to the Plaintiff homeowners that the Park clubhouse and facilities were ADA compliant.

b.    Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm were related in that they are all alter egos of Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee.

c.    The *Royal Palm Village Mobile Home Park Enterprise* possessed sufficient longevity for the members to carry out their purpose(s) in that the *Royal Palm Village Mobile Home Park Enterprise* existed from 2009 through 2019 (at a minimum).

d.    Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of the *Royal Palm Village Mobile Home Park Enterprise* through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341 and 1343 (described in paragraphs 42 to 51).

55.    At all relevant times, the enterprises alleged in paragraphs 42 through 51 (*supra*) were engaged in, and their activities affected, interstate commerce and foreign commerce.

56.    All of the acts of racketeering/crime described in paragraphs 42 to 51 were related so as to establish a pattern of racketeering activity or criminal activity, within the meaning of 18 U.S.C. § 1962(c), in that their common purpose was to defraud Plaintiffs of money and property through the use of the fraudulent and illegal sale of the Park in violation of Florida Law; misrepresentation that Defendants Sun Communities and Royal

Palm Village would spend $1,000,000 on the Park as an inducement for the representative
Royal Palm HOA entering into an oppressive and illegal five year agreement; $399 Home
Prep Fee″ in violation of Florida Law; and discriminatory premium rental categories for
fraudulent and misrepresented ″water″ (really retention ponds) and ″preserve″ (scrubland)
facing lots; and misrepresenting to the Plaintiff homeowners that the Park clubhouse
and facilities were ADA compliant; Monica Slider, Sheri Woodworth, Belinda Lawson,
and Richard Lee, personally or through their agent or agents, directly or indirectly,
participated in all of the acts and employed in similar methods of commission; Plaintiffs
were the victims of the acts of racketeering/crime; or the acts of racketeering/crime were
otherwise interrelated by distinguishing characteristics and were not isolated events.

57.    All of the acts of racketeering described in paragraphs 42 to 51 were
continuous so as to form a pattern of racketeering activity in that Monica Slider, Sheri
Woodworth, Belinda Lawson, and Richard Lee engaged in the acts of racketeering/
crime over a substantial period of time (i.e., from 2009 through 2019) and in that the
acts of racketeering/crime have become the regular way in which Monica Slider, Sheri
Woodworth, Belinda Lawson, and Richard Lee do business and, thus, threaten to continue
indefinitely.

58.    As a direct and proximate result of, and by reason of, the activities of
Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee and their conduct
in violation of 18 U.S.C. § 1962(c), Plaintiffs were injured in their business or property,
within the meaning of 18 U.S.C. § 1964(c). Among other things, Plaintiffs suffered
damages to the extent their business or property was transferred to Monica Slider, Sheri
Woodworth, Belinda Lawson, and Richard Lee; to the extent Plaintiffs incurred legal fees
to set aside or reverse the transfers of money or property that were fraudulently made by
Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee; and to the extent
that Plaintiffs paid for services that provided no benefit to Plaintiffs and only inflicted

harm upon them. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with costs, reasonable attorneys' fees and reasonable experts' fees.

**Count Two – RICO; Racketeer Influenced and Corrupt Organizations Act**
Violation of 18 U.S.C. § 1962(c) by Defendants Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm

59.     Plaintiffs reallege and restate paragraphs 1 through 58.

*Corporate Enterprise*

60.     Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), in that they were "a group of individuals associated in fact" (referred to in this Second Amended Complaint as the "*Corporate Enterprise*").

a.     Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm shared the common purposes of developing the Park and defrauding Plaintiffs of money or property through the use of the fraudulent and illegal sale of the Park in violation of Florida Law; misrepresentation that Defendants Sun Communities and Royal Palm Village would spend $1,000,000 on the Park as an inducement for the representative Royal Palm HOA entering into an oppressive and illegal five year agreement; $399 Home Prep Fee" in violation of Florida Law; and discriminatory premium rental categories for fraudulent and misrepresented "water" (really retention ponds) and "preserve" (scrubland) facing lots; and misrepresenting to the Plaintiff homeowners that the Park clubhouse and facilities were ADA

compliant;

b. Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm were related in that they are all controlled by Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee.

c. The *Corporate Enterprise* possessed sufficient longevity for the members to carry out their purpose(s) in that the *Corporate Enterprise* existed from 2009 through 2019 (at a minimum).

d. Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who individually conducted, participated in, engaged in, and operated and managed the affairs of the *Corporate Enterprise* through a pattern of racketeering activity or criminal activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c). The pattern of racketeering activity or criminal activity consisted of, but was not limited to, the acts of mail and wire fraud (as described in paragraphs 42 to 51).

**Alternative 1: *Royal Palm Village Enterprise***

61. In the alternative to paragraph 60, between 2009 and 2019 (at a minimum), Royal Palm Village,  constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), in that it was a legal entity.

a. Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm are each a "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c),

who individually conducted, participated in, engaged in, and
operated and managed the affairs of Royal Palm Village, through
a pattern of racketeering activity or criminal activity within the
meaning of 18 U.S.C. §§ 1961(1), 1961(5), and 1962(c). The pattern
of racketeering activity or criminal activity consisted of, but was not
limited to, the acts of mail and wire fraud, 18 U.S.C. §§ 1341 and
1343 (as described in paragraphs 42 to 51).

62.     At all relevant times, the enterprises alleged in paragraphs 60 through 61
(*supra*) were engaged in, and their activities affected, interstate commerce and foreign
commerce.

63.     All of the acts of racketeering described in paragraphs 42 to 51 were
related so as to establish a pattern of racketeering activity or criminal activity, within
the meaning of 18 U.S.C. § 1962(c), in that their common purpose - and common result
- was to defraud Plaintiffs of money and property through the use of fraudulent and
illegal sale of the Park in violation of Florida Law; misrepresentation that Defendants
Sun Communities and Royal Palm Village would spend $1,000,000 on the Park as an
inducement for the representative Royal Palm HOA entering into an oppressive and
illegal five year agreement; $399 Home Prep Fee″ in violation of Florida Law; and
discriminatory premium rental categories for fraudulent and misrepresented ″water″
(really retention ponds) and ″preserve″ (scrubland) facing lots; and misrepresenting to the
Plaintiff homeowners that the Park clubhouse and facilities were ADA compliant; Royal
Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and
Lutz Bobo Law Firm personally or through their agent or agents, directly or indirectly,
participated in all of the acts and employed in similar methods of commission; Plaintiffs
were the victims of the acts of racketeering; or the acts of racketeering were otherwise

interrelated by distinguishing characteristics and were not isolated events.

64.    All of the acts of racketeering described in paragraphs 42 to 51 were continuous so as to form a pattern of racketeering activity in that Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm engaged in the acts of racketeering/crime over a substantial period of time (i.e., from 2009 through 2019) and in that the acts of racketeering/crime have become the regular way in which Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm do business and, thus, threaten to continue indefinitely.

65.    As a direct and proximate result of, and by reason of, the activities of Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm and their conduct in violation of 18 U.S.C. § 1962(c), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c). Among other things, Plaintiffs suffered damages to the extent their business or property was transferred to Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm; to the extent Plaintiffs incurred legal fees to set aside or reverse the transfers of money or property that were fraudulently made by Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm; and to the extent that Plaintiffs paid for services that provided no benefit to Plaintiffs and only inflicted harm upon them. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with costs, reasonable attorneys' fees, and reasonable experts' fees.

**Count Three – RICO; Racketeer Influenced and Corrupt Organizations Act**
Violation of 18 U.S.C. § 1962(d) – by Defendants Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee

66.     Plaintiffs reallege and restate paragraphs 1 through 65.

67.     As alleged in Count One, one or more of the following individuals violated 18 U.S.C. § 1962(c): Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee. Any of these person(s) who violated 18 U.S.C. § 1962(c) are referred to as the "Violator(s)" for the remainder of this Count.

68.     Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee conspired with the Violator(s) to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*supra*, ¶¶ 53-54) through a pattern of racketeering activity or criminal activity (*supra*, ¶¶ 42-51) in violation of 18 U.S.C. § 1962(d). In particular, Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee intended to further an endeavor of the Violator(s) which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and adopted the goal of furthering or facilitating the criminal endeavor.

69.     Plaintiffs were injured by Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee's overt acts that are acts of racketeering/crime or otherwise unlawful under the RICO statute, which included (among other acts) mail and wire fraud, 18 U.S.C. §§ 1341 and 1343 (as described in paragraphs 42 to 51).

70     As a direct and proximate result of, and by reason of, the activities of Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee and their conduct in violation of 18 U.S.C. § 1962(d), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c). Among other things, Plaintiffs suffered damages to the extent their business or property was transferred to Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee; to the extent Plaintiffs incurred legal fees

to set aside or reverse the transfers of money or property that were fraudulently made by Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee; and to the extent that Plaintiffs paid for services that provided no benefit to Plaintiffs and only inflicted harm upon them. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with costs, reasonable attorneys' fees, and reasonable experts' fees.

### Count Four – RICO Conspiracy; Racketeer Influenced and Corrupt Organizations Act
Violation of 18 U.S.C. § 1962(d) – by Defendants Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm

71.     Plaintiffs reallege and restate paragraphs 1 through 70.

72.     As alleged in Count One, the following individuals violated 18 U.S.C. § 1962(c): Monica Slider, Sheri Woodworth, Belinda Lawson, and Richard Lee.

**Royal Palm Village, Sun Communities, American Land Lease, and Asset Investors Partnership, or Lutz Bobo Law Firm conspired with Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee**

73.     Royal Palm Village, Sun Communities, American Land Lease, and Asset Investors Partnership, or Lutz Bobo Law Firm conspired with Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*supra*, ¶¶ 53-54) through a pattern of racketeering activity or criminal activity (*supra*, ¶¶ 42-51) in violation of 18 U.S.C. § 1962(d). In particular, Royal Palm Village, Sun Communities, American Land Lease, and Asset Investors Partnership, or Lutz Bobo Law Firm intended to further an endeavor of Monica Slider, Sheri Woodworth, Belinda Lawson, or Richard Lee which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and adopted the goal of furthering or facilitating the criminal endeavor.

## Sun Communities conspired with Richard Lee or Monica Slider

74.     Sun Communities conspired with Richard Lee or Monica Slider to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises (*supra*, ¶¶ 53-54) through a pattern of racketeering activity or criminal activity (*supra*, ¶¶ 42-51) in violation of 18 U.S.C. § 1962(d). In particular, Sun Communities intended to further an endeavor of Richard Lee or Monica Slider which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c) and adopted the goal of furthering or facilitating the criminal endeavor.

75.     Plaintiffs were injured by Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm's overt acts that are acts of racketeering/crime or otherwise unlawful under the RICO statute, which included (among other acts) acts of mail and wire fraud, 18 U.S.C. §§ 1341 and 1343 (as described in paragraphs 42 to 51, *supra*).

76.     As a direct and proximate result of, and by reason of, the activities of Royal Palm Village, Sun Communities, American Land Lease, Asset Investors Partnership, and Lutz Bobo Law Firm, and their conduct in violation of 18 U.S.C. § 1962(d), Plaintiffs were injured in their business or property, within the meaning of 18 U.S.C. § 1964(c). Among other things, Plaintiffs suffered damages to the extent their business or property was transferred to Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee; to the extent Plaintiffs incurred legal fees to set aside or reverse the transfers of money or property that were fraudulently made by Monica Slider, Sheri Woodworth, Belinda Lawson or Richard Lee; and to the extent that Plaintiffs paid for services that provided no benefit to Plaintiffs and only inflicted harm upon them. Plaintiffs are, therefore, entitled to recover threefold the damages they sustained together with costs, reasonable attorneys' fees, and reasonable experts' fees.

**Count Five – Denial of Rights of Access under Americans with Disabilities Act ("ADA") –** Violations of the Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101 *et seq.*) and related Florida statutes by Defendants Sun Communities and Royal Palm Village

77.     The Royal Palm HOA realleges and restate paragraphs 1 through 25 and 41.

78.     The Royal Palm HOA represents all of the mobile homeowners in the Park "... in all matters relating to the Florida Mobile Home Act." *See* §§ 723.075(1) and 723.076(1); *see also Rule* 1.222, *Fla. R. Civil P.*

79.     The officers and directors of the Royal Palm HOA have a fiduciary relationship to the homeowners and must discharge their duties in good faith.

80.     Royal Palm HOA has the authority to initiate mediation and litigation on behalf of all of the homeowners regarding an increase in lot rental amount, reduction in services or utilities, or change of rules and regulations. Importantly, the subject of ADA compliance is a regular expressed concern of the elderly homeowners and the Royal Palm HOA in its meetings and discussions with the Defendants Sun Communities, Royal Palm Village and their employees or agents.

81.     If the park owner offers the Park for sale to the general public or receives an "unsolicited" offer to purchase the Park, the Royal Palm HOA has a right to be notified of the offer, the price and the terms and conditions of sale, and permitted 45 days to execute a contract meeting the price, terms and conditions. Royal Palm HOA has the express statutory right to negotiate for, acquire, and operate the mobile home park on behalf of the mobile home owners.

82.     The Plaintiff mobile home owners are "elderly persons" as defined by Section 825.101( 4), *Fla. Stat.*, as persons " ... 60 years of age or older who is suffering from the infirmities of aging as manifested by advanced age or organic brain damage, or other physical, mental, or emotional dysfunctioning, to the extent that the ability of the

person to provide adequately for the person's own care or protection is impaired." The Plaintiff mobile home owners have mobility, balance, gait, vision, and hearing difficulties. When traveling about in public, many Plaintiff mobile home owners require the use of either walking canes or sticks, walkers, wheelchairs, audiovisual devices, and hearing aids. Consequently, many Plaintiff mobile home owners are "physically disabled," as defined by all applicable Florida and United States laws, and a member of the public whose rights are protected by these laws.

83.     Plaintiff mobile home owners suffer from low vision and age-related cognitive decline as a "qualified disability" under the ADA as defined in 42 U.S.C. §12012 (1)(A) and in 42 U.S.C. 3602, §802(h). They are substantially limited in performing one or more major life activities, including but not limited to accurately visualizing their world, adequately traversing obstacles and walking without assistance.

84.     The Park clubhouse, recreation center, swimming pool, fitness center, shuffleboard courts, and horseshoe pits are public accommodations, open to the public, which is intended for nonresidential use and whose operation affects commerce.

85.     The Plaintiff mobile homeowners live in the Park and visit the Park facilities on a regular basis. he Plaintiff mobile homeowners regularly encounter barriers (both physical and intangible) that interfered with - if not outright denied - their ability to use and enjoy the goods, services, privileges and accommodations offered at the Park. Plaintiffs personally encountered the following barriers at the Facility:

        a)     The only ramp located at the Clubhouse parking area is improperly configured and contains no guide curbs. Designated Wheelchair Parking Spaces at the Pool and gym must be re-drawn and re-painted in accordance with ADA regulations to allow for a proper wheelchair loading and unloading;

        b)     On numerous occasions during their visits to the Clubhouse,

Plaintiffs experienced problems when transferring onto their wheelchair from their vehicle because of the configuration and side-slope of the designated parking space and access aisle located next to it;

c)    During many visits to the Park operations center located just inside the entrance to the Park, Plaintiffs have attempted but been unable to enter the operations center because the door of the office is too narrow for a wheelchair;

d)    Plaintiffs have been unable to enter the Park operations center by using an alternative entrance. Plaintiffs have been unable to place their rental payment into the box located outside of the operations center and have had to return to place their payment in the box;

e)    The entrances to the Park Clubhouse and operations center have no wheelchair-friendly automated electric doors and entry/exit pads. The Clubhouse should be equipped with additional automated electric doors and entry/exit pads in the event of an emergency evacuation;

f)    The Clubhouse stage lacks a wheelchair ramp to the stage for the disabled to participate in numerous Community activities;

g)    The bathroom stalls were re-configured for handicap accessibility during the Park Clubhouse remodeling phase approximately two years ago; however, the actual doors to enter or exit the women's washroom is impossible for a wheelchair bound individual to open from the inside without assistance. An automated electric door would eliminate this problem for both men's and women's washrooms. The restrooms also lack necessary wheelchair

clearances to use the sink. Plaintiffs experienced difficulty on many occasions while trying to use the restroom in the four years preceding this action;

h)    None of the Park pools or hot tub have a lift. The pool decks are not wheelchair accessible. The gates for the pool decks will not allow wheelchair users the ability to enter or exit the pool decks without assistance;

i)    The entrance to the gym is not equipped with automated electric doors to allow wheelchair entry or exit without assistance;

86.    Plaintiffs were, and continue to be deterred from visiting the Clubhouse because they know that the Clubhouse's goods, services, facilities, privileges, advantages, and accommodations deny full and equal access to Plaintiffs due to their physical disabilities. Plaintiffs have learned that the following additional barriers to their full and equal access exist at the facility, each of which relates to his disabilities:

**Site Entrance Signage**

a)    Site informational signage was not provided directing to the accessible entrance and route of travel.

b)    Tow-away warning signage was not provided visible from the street entrance or accessible parking space.

**Accessible Parking**

c)    Van accessible signage was not provided for the van accessible parking space.

d)    Accessible parking access aisles was not outlined in blue.

e)    Accessible parking signage mounted on the pole is not 80" minimum above the surface.

**Exterior Accessible Routes**

f)      A minimum of one accessible route was not provided from the public way to the accessible entrance.

g)      Sidewalk has raised lips that exceed 1/4" in height.

h)      Ramp at the end of the access aisle does not have edge protection on both sides of the ramp and exceeds 8.33%.

**Accessible Doors**

i)      Entrance door thresholds exceed 1/2″ in height.

j)      Entrance door landings exceed 2% slope.

k)      Entrance doors do not have the required smooth kick plate 10" high on the bottom of the doors.

**Restrooms**

l)      Side grab bars are not 48" long and extending a minimum of 24" in front of the toilet.

m)      Rear grab bar was not properly located on the wide side of the toilet.

n)      Soap dispenser was not located to be 40" maximum above floor to operable parts.

o)      Toilet paper dispenser was not located to be 7"- 9" in front of toilet.

p)      Plumbing and sharp objects under sink were not properly protected.

q)      Toilet was not offset to be 16"-18" from side wall.

r)      Proper floor clear area was not provided in front of the toilet for transfer space.

**General**

t)      There are no fire alarms, strobes, horns or sprinkler system in the main social events or large congregational hall.

87.     Plaintiffs live at the Park and must have ongoing access to the Clubhouse.

88.     Defendants Sun Communities and Royal Palm Village knew or should have known that these elements and areas of the Clubhouse were inaccessible, violate state and federal law, and interfere with or deny access to the physically disabled. Moreover, Defendants Sun Communities and Royal Palm Village have the financial resources to remove these barriers from the Park without much difficulty or expense, and make the Park accessible to the physically disabled. To date, however, Defendants Sun Communities and Royal Palm Village refuse to either remove those barriers or seek an unreasonable hardship exemption to excuse noncompliance.

89.     At all relevant times, Defendants Sun Communities and Royal Palm Village have possessed and enjoyed sufficient control and authority to modify the Park to remove impediments to wheelchair access and to comply with the 2010 Standards for Accessible Design. Defendants Sun Communities and Royal Palm Village have not removed such impediments and have not modified the Park to conform to accessibility standards. Defendants Sun Communities and Royal Palm Village have intentionally maintained the Park in its current condition and have intentionally refrained from altering the Park so that it complies with the accessibility standards.

90.     Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).

91.     Defendants Sun Communities and Royal Palm Village discriminated against Plaintiffs by denying them "full and equal enjoyment" and use of the goods,

services, facilities, privileges and accommodations of the Clubhouse during each visit and each incident of deterrence.

**Failure to Remove Architectural Barriers in an Existing Facility**

92.     The ADA specifically prohibits failing to remove architectural barriers, which are structural in nature, in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

93.     When an entity can demonstrate that removal of a barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also specifically prohibited if these methods are readily achievable. *Id.* 42 U.S.C. § 12182(b)(2)(A)(v).

94.     Here, Plaintiffs allege that Defendants Sun Communities and Royal Palm Village can easily remove the architectural barriers at the Park without much difficulty or expense, and that Defendants Sun Communities and Royal Palm Village violated the ADA by failing to remove those barriers, when it was readily achievable to do so.

95.     In the alternative, if it was not "readily achievable" for Defendants Sun Communities and Royal Palm Village to remove the Park's barriers, then Defendants Sun Communities and Royal Palm Village violated the ADA by failing to make the required services available through alternative methods, which are readily achievable.

WHEREFORE, Plaintiffs demand judgment against Defendants Sun Communities and Royal Palm Village and request injunctive and declaratory relief.

**Demand For Jury Trial**

Plaintiff mobile home owners demand a jury trial as to all issues triable by jury in this case.

**Relief Requested (All Counts)**

Wherefore, as to all counts, Plaintiff mobile home owners request that:

a.      Judgment be entered in favor of Plaintiff mobile home owners and against Sun Communities, American Land Lease, Asset Investors Partnership, Royal Palm Village, Monica Slider, Sheri Woodworth, Belinda Lawson, Richard Lee, and the Lutz Bobo Law Firm jointly and severally, in the amount of Plaintiffs' damages to be proven at trial;

b.      Plaintiff mobile home owners be awarded treble damages to the extent permitted by 18 U.S.C. § 1964(c);

c.      Plaintiff mobile home owners be awarded prejudgment interest on the amount of damages or losses that Plaintiff mobile home owners have sustained;

d.      Plaintiff mobile home owners be awarded injunctive relief under Rule 65, *Fed. R. Civ. P.*;

e.      The Court issue a declaratory judgment that Defendants Sun Communities  and Royal Palm Village violated the Plaintiff mobile home owners' rights as guaranteed by the ADA;

f.      Plaintiff mobile home owners be awarded reasonable costs and attorneys' fees under 18 U.S.C. § 1964(c);

g.      Plaintiff mobile home owners be awarded other and further equitable and legal relief as the Court finds just and necessary.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 6, 2020 I electronically filed a copy of this

Second Amended Complaint with the Clerk of Court using the CM/ECF System which

issues service upon the parties of record.

/s/ Daniel W. Perry
DANIEL W. PERRY
FB # 376671
4767 New Broad St. #1007
Orlando, FL 32814-6405
Ph 407-894-9003
dan@danielperry.com
Attorney for Plaintiffs